**890**

### KENTUCKY BAR ASSOCIATION, Complainant,

v.

### David C. GRAVES, Jr., Respondent.

Supreme Court of Kentucky.

Aug. 19, 1977.

As Modified Oct. 28, 1977.

Leslie G. Whitmer, Director, Kentucky Bar Ass'n, Frankfort, John T. Damron, Asst. Director, Kentucky Bar Ass'n, Frankfort, for complainant.

Michael E. Conover, Harrodsburg, for respondent.

PER CURIAM.

In this disciplinary proceeding, David C. Graves, Jr., a Lexington attorney, is before this court by rule pursuant to RAP 3.410 to show cause why he should not be adjudged guilty of unprofessional conduct and disciplined therefor. Graves filed no response to the rule. However, he filed an answer to the inquiry tribunal's charge and a brief with the Board of Governors of the Kentucky Bar Association.

On May 14, 1977, the Board of Governors considered the pleadings, briefs and exhibits. By a roll call vote, 12 of the 14 members of the board found Graves guilty of unethical and unprofessional conduct calculated to bring the bench and bar into disrepute. On the issue of punishment 12 of the members recommended that Graves be publicly reprimanded and required to pay the costs of this action. Other recommended punishments were a six-month's suspension and a sixty-day suspension.

The conduct complained of concerns the nature and amount of certain charges by Graves against a client's funds which he held in escrow. The pertinent facts are as follows: On January 11, 1975, Glen Church fell from a platform located in the Mansbach Metal Company yard in Ashland, Kentucky. The platform was 60 ft. high, and the fall resulted in serious injuries to Church. These injuries were further complicated by possible negligent first aid rendered at the scene. Church and his wife, Verna Mae, contacted several Ashland attorneys. They were afraid of certain conflicts of interest on the part of Ashland attorneys and decided to employ out-of-town counsel. They contacted Graves and on December 29, 1975, met with him in his Lexington office. During that conference an employment contract was executed. That contract provided that Graves would prosecute a workmen's compensation claim for Glen Church with the fee to be fixed by the Workmen's Compensation Board. Graves was to prosecute other claims on a contingent fee basis by which he would receive 40% of the gross amount recovered, or 50% in the event of any appeal. Graves charged the Churches a retainer fee in the amount of $500.00 which was paid upon execution of the agreement. The contract further provided:

"ALL NECESSARY COSTS AND EXPENSES—of any and all litigations, claims or otherwise, including the necessary expenses involved in connection therewith, shall be borne and paid by the clients [Churches], with the clients depositing the sum of $1000.00 to be placed in an escrow account, with a monthly accounting being forwarded to said clients and same to be reimbursed monthly."

That same day the Churches deposited $1000.00 in Graves' escrow account. During the ensuing six months, until June 7, 1976, Graves charged to the escrow account various expenses. These included expenses for secretarial assistance, law clerks, copying, bookkeeping, dinner and travel. The total expenses charged against the escrow account during that six-month period amounted to $3,198.76 which did not include the $500.00 retainer fee. By deposits on February 2nd, February 23rd, and March 8th, the Churches actually deposited in the escrow account a total of $2,840.65 toward the charge of $3,198.76. The record reveals that during this period the Churches received no monetary benefits. Yet, when the escrow account was at low tide, urgent demands were made by Graves to keep the money flowing—to swell the tide.

By this time the Churches became suspicious that some of the charges to the escrow account were improper. On June 11, 1976, they filed a complaint with the Kentucky Bar Association. Through its inquiry tribunal, Graves was charged with unprofessional and unethical conduct. In its reply to Graves' motion for a more definite statement, the Kentucky Bar Association listed the following as improper charges:

"1–8–76 Trip to Ashland—Graves, Capillo, Bouvier-----Per diem $ 8.00

1–9–76 New Orleans House—Graves, Van Devier—Dinner 60.00

1–29–76 Secretary and bookkeeping expenses 121.00

1–31–76 Hours spent on Church case—
Joe Bouvier 186.75
Hours spent of Church case—Jim Capillo 269.75

2–13–76 Secretarial expenses 279.50

2–27–76 James J. Capillo (clerking and research) $ 71.50

2–27–76 Secretarial expenses 65.00

2–27–76 Clerking and research expenses—Joe Bouvier 60.75

3–26–76 James J. Capillo, Clerking and research 13.00
secretarial expenses 32.50
Joseph Bouvier—clerking and research 45.00

4–7–76 James J. Capillo—Clerking and research 6.50
Joseph Bouvier—Clerking and research 13.00
secretarial services 19.50

5–28–76 Secretarial services 26.50
Joseph Bouvier, Clerking and research 97.50

6–1–76 Research re additional legal services of social security appeal 150.00

6–7–76 Joseph Bouvier, research and preparation of draft of appellate brief 78.00
Secretarial services 130.00."

It is noted that the expense of law clerk investigation, research and travel time resulted in a total of $991.75. Secretarial and bookkeeping charges totaled $673.50. On January 9, 1976, Graves "wined and dined" Dr. Van Devier at the New Orleans House in Louisville, Kentucky, at a cost of $60.80. This was done, so Graves says, in order that Dr. Van Devier would give the Churches a referral to an orthopedic surgeon who was his personal friend. Graves also charged an additional $34.00 to the escrow account as travel expense to the New Orleans Restaurant.

The Kentucky Bar Association admits that the Code of Professional Responsibility mandatorily requires a lawyer to charge a client for the expense of litigation such as court costs, investigation, medical examination, obtaining and the presentation of evidence. However, the Kentucky Bar Association contends that Graves' billing procedures relieves him the necessity of deducting the expense of maintaining his office from his contingent fee, and the charges to the escrow account by Graves constitutes a disguised fee.

In response, Graves argues that the Churches employed him shortly before the

statute of limitations would have barred their claims. He insists that this "necessitated his representation of other clients, engaging of extraordinary secretarial help, investigators, engineers, etc., far, far beyond the usual, ordinary attorney-client agreement." He states he "has no employees of his own and has his secretarial and legal research/investigatory work done by private contractors." Graves also contends that he has strictly complied with the terms of the agreement. He has kept his billing to a minimum by eating in "greasy spoon" and fast food restaurants. He argues that he has violated no expressed prohibition of the Code of Professional Ethics. Therefore, to punish him for his conduct would be in violation of the prohibition against ex post facto laws and would deprive him of his constitutional right to due process. In support of his position Graves cites the 1971 Fee Manual promulgated by the Kentucky Bar Association, which states:

"In those instances when the urgency of a client's matter requires the hiring of additional stenographic services or additional compensation of a lawyer's staff, such expenses should be billed to the client."

Graves' argument is totally without merit. It borders on the frivolous. It is refuted by the record. Surely, Graves is aware that the minimum fee schedule was abolished by this court on September 25, 1973, as a result of *Goldfarb v. Virginia State Bar et al.*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975).

This court concludes that Graves' conduct in billing to the escrow account expenses of law clerks, secretarial assistance, a sumptuous meal and other exorbitant charges, especially in the absence of a specific agreement with respect to those particular expenses, are improper. He needed no disciplinary regulation to tell him right from wrong. It is difficult for this court to comprehend an attorney with a full-time practice to expect his clients to meet his overhead expenses. A law clerk may ren-

der valuable services in many areas of a lawyer's practice. However, they should not be compensated from an escrow account as was done in this case. Opening a law office without a secretary is no more practical than to be without a library and furniture. It is doubtful if any member of the public who needed a lawyer would employ one who was to charge a standard fee for his legal services and then charge the costs of his secretaries and law clerks as expenses of litigation.

This court is mindful of the quips, gags and attacks on the integrity of the legal profession. Yet, it is still regarded as a highly responsible and noble profession. In his advice to young lawyers, Judge John F. Phillips of a U.S. District Court said:

"The profession you have chosen is the most exalted that ever engaged the ambition of intellectual men. Yours is the profession to which the present and posterity must look for the preservation of what is cohesive in our social organism."

Many years ago in a treatise on legal ethics, G. Sharswood stated:

"No man can ever be a truly great lawyer who is not in every sense of the word, a good man. . . . There is no profession in which moral character is so soon fixed as that of the law; there is none in which it is subjected to severer scrutiny by the public. . . . From the very commencement of a lawyer's career, let him cultivate above all things truth, simplicity and candor; they are the cardinal virtues of a lawyer."

This court is of the opinion that Graves' conduct in this matter violates every concept of ethical conduct required of an attorney. Such conduct adds fuel to the flame of those who attack the integrity of the legal profession. It is with reluctance that the court adopts the recommendation of the Board of Governors to publicly reprimand Graves. This action is prompted by unusual facts which have not previously been presented. However, should such a case with similar circumstances be presented to

this court in the future, the punishment imposed upon a like offender will be more severe.

This court affirms the recommendation of public censure of Graves for his unethical conduct which is established by the writing and publication of this opinion.

All concur except REED, C. J., who did not sit or participate in the decision of this case.