## 10511

### JENNINGS v. ANDERSON *ET AL.*

#### (104 S. E. 189.)

1. HABEAS CORPUS—WELFARE OF CHILD PARAMOUNT CONSIDERATION IN DETERMINING CUSTODY.—The statute do not interfere with the chancery jurisdiction of the Courts to determine the right to custody of children, and all contracts for such custody are subject to the control of the Courts, who give paramount consideration to the best interest of the child in determining the rights to its custody.

2. HABEAS CORPUS—DEED GIVING CUSTODY OF CHILD EFFECTIVE ONLY AS SHOWING UNFITNESS OF PARENT.—A deed by a parent, giving to another the custody of his child, does not in fact estop the parent from recovering possession of the child, if it is for the child's best interest, but operates only to show that the parent is so unmindful of his obligations that he is unfit to have the custody awarded to him.

3. HABEAS CORPUS—WELFARE OF ILLEGITIMATE CHILD HELD BEST SERVED BY GIVING CUSTODY TO MOTHER.—In *habeas corpus* proceedings to recover the custody of an illegitimate child, where it appeared that the mother had reformed, and had fitted herself to support herself and the child, and would remove the child to a locality where the facts of its birth were not public, the welfare of the child would be best served by awarding the custody to the mother, rather than to persons who had had custody of the child, but who would keep it in the locality where its disgrace was public.

Before MAULDIN, J., Greenville, July, 1919. Reversed.

Proceeding in *habeas corpus* by Jesse M. Jennings against Mrs. Ora Anderson and Nellie Shaw, *alias* Nellie Anderson, to obtain custody of a child. From an order delivering the child to the plaintiff, the defendant appeals.

*Messrs. Martin & Blythe,* for appellant, cite: *Mother of illegitimate child had under common law, highest right to custody of child:* 5 Cyc. 637. *Parent may divest herself of custody of child:* Sec. 3783, 1 Civil Code 1912; sec. 3798, Id. Estoppel by conduct must be clear and convincing: 73 S. C. 303; but estoppel, as a general rule, not applicable to

NOTE.—On right of mother, or reputed father, of illegitimate child to its custody or control, see note in 65 L. R. A. 689.

*minors:* 22 Cyc. 512; 2 Rich. L. 148; 44 Am. Dec. 286, and note; 3 Rich. L. 164; 29 S. C. 414; 76 S. C. 562; 79 S. C. 413. *Plaintiff did not act on any act or language of defendant and estoppel not available:* 97 S. C. 117; 96 S. C. 106; sec. 3798, 1 Civ. Code 1912, and Act 1911 (27 Stat. 135).

*Messrs. Bonham & Price* and *T. E. LaGrone,* for respondent, cite: *Bruner Industrial Home is such an orphanage as is contemplated in sec. 3798; sec. 3783 refers to legitimate children. Estoppel:* 22 Cyc. 512; 73 S. C. 296; 38 L. R. A. 694. *Intentional and fraudulent conduct of minor may constitute estoppel:* 38 Fed. Rep. 482; 76 S. C. 562; 79 S. C. 412. *Each case of fitness must be decided on its own merits, with regard to welfare of the child:* 74 S. C. 546; 72 S. C. 16; 54 S. C. 392; 6 Rich. 346; 11 Rich. 495; 17 Enc. L. 368; 27 L. R. A. 61.

October 11, 1920.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is a proceeding in *habeas corpus* to determine the custody of an illegitimate child named James. Fortunately the cardinal facts are not in dispute. Nellie Shaw, one of the appellants, in 1914 gave birth to an illegitimate child. At the time of the birth of the child Nellie was only 17 years old. Nellie's mother, after the death of Nellie's father, married a man named Anderson. Mr. Anderson seems to be an entirely worthy man. Finding the disgrace that had been brought upon him, Mr. Anderson refused to allow Nellie or her child to come to his home. Mrs. Anderson, Nellie's mother, placed the child in the Bruner Industrial Home in Greenville, and agreed to and did pay the home $8 per month for the support of the child. After keeping the child for a few months, those in charge of the Home turned the child over to the respondent and his wife,

who in an informal sort of way undertook to adopt it and
have had the custody of it until quite recently, when the
mother took it away. Nellie married a brother of her step-
father. We shall hereafter refer to the appellants, the
mother and daughter, as Mrs. Ora and Mrs. Nellie. Mrs.
Nellie's husband is much older than his wife, and they did
not live together long. For a while at least Mrs. Nellie did
not live a correct life. The presiding Judge, in his decree,
says:

"It may be that a disposition to trust too implicitly in the
attractive promises of a dissolute male companion is the
cause to which the worry and sorrow unfolded by this pres-
ent case may be attributed."

Too many young girls, when they fall, are thrown into
despair and lead lives of shame from a supposed necessity.
Mrs. Nellie claims to have reformed. It is undisputed that
she went to work to help pay for the care of her child at the
Bruner Industrial Home and to fit herself for making an
honest living. She became a stenographer, and rose rapidly,
until she was earning $105 per month in Washington in war
work.

There is nothing in the record to show that either Mrs.
Ora or Mrs. Nellie knew of or consented to the transfer of
the custody of the child from the Bruner Home to Mrs.
Jennings. The record does not show how long the mother
and grandmother were in ignorance of people who had the
custody of the child. The record shows that Mr. Anderson,
the stepfather of Mrs. Nellie, has relented, and is now will-
ing to receive Mrs. Nellie and her child into his home, and
that he allowed Mr. Jennings to move on his place with the
child.

The petition for the writ is based on the right of posses-
sion under a deed from the superintendent of the Bruner
Industrial Home. The appellants deny the validity of the
deed, and set up that Mrs. Nellie is the mother, and that it
would be to the best interest of the child that it should be in

the custody of its mother. On the hearing on the Circuit the custody of the little boy was given to Mr. Jennings. From this order the mother and grandmother appeal. .

There are 11 exceptions, including questions of statutory construction, estoppel, etc. The statutes do not purport to interfere with the chancery jurisdiction of the Courts, and all contracts are made subject to the control of the Courts. The Courts have held time and again that the paramount question that controls all others is the best interest of the child. That which may sometimes be called estoppel is not in fact estoppel at all. To illustrate: Where a father makes a deed under the statute, disposing, so far as he is concerned, of the custody of the child, the deed may operate, not so much as a legal estoppel as to him, but it may show that the parent is so unmindful of his parental obligations to the child that he is an unfit person to have that custody. restored to him. The custody may then be given to the grantee, a stranger, who is a proper person, in preference to the parent, who has demonstrated by the deed his utter unfitness.

Mrs. Nellie was a girl 17 years old when this child was born. She had no home, and was forbidden to go to the home of her mother or to leave her child there. As was stated before, many young girls would have felt themselves . bound to surrender to · utter despair. To struggle against what might have seemed insuperable obstacles, and fit herself for making and then making, · an honest living, shows that there is a latent goodness and strength in her character that demands respect and encouragement. So far as she is concerned, it is not controlling. Mr. and Mrs. Jennings have expended time, care, and affection on the child, that also demands respect and encouragement. So far as they are concerned, it is not controlling. The question is the best interest of the child. There is nothing to mar the good name of Mr. and Mrs. Jennings. There is a grievous stain

on Mrs. Nellie.   She says she has repented.   It does not lie in the mouth of man to say that there is no place for repentance, "though she seeks carefully with tears."   What evidence has she given of the repentance?   She has made a heroic struggle under a fearful handicap to fit herself for the making of an honest living.   She has come to the Court and confesses more than her antagonists could prove.   She confesses that she married Mr. Anderson and did not tell him of her child.   She confesses that her husband is a good man, and that he treated her kindly.   She confesses that she took her child from Mr. Jennings without disclosing her purpose.   All of these she said were wrong.   She offers no word of palliation or excuse for her wrong.   Her treatment of Mr. and Mrs. Jennings is significant.   She said that Mrs. Jennings called the child by a hard name, and Mr. Jennings punished the child for striking a dog.   Mr. Jennings admitted that he had punished the child.   No blame attached to him for that, unless the punishment was cruel, unjust or too severe.   This made her mad, of course; but she does not yield to the temptation to exaggerate the faults of others, while still confessing her own.

True repentance is the "turning from sin with an earnest endeavor after a new obedience."   Mrs. Nellie's attitude, without expressly so stating, is that of one who seeks, in a measure at least, to undo the great wrong she has done to the child.   She does not ask that the child be given to her, to strengthen her to a better life.   For that purpose it cannot be granted, much as our sympathies may be with her. It is to the interest of the child, however, that its mother shall live a pure life.   For that reason it may be granted The respondent claims that, as long as the child remains with its mother, the mother's shame will overshadow the child. The bringing of this suit has fixed in that community the shame of its birth on the child irrevocably.   That which might have been suspicious before is certainty now and matter of public record.   If this child continues to live in

that community, a measure of social ostracism is bound to be felt, that will bestow many a heartache and tend to make of the child a misanthrope in heart and an Ishmaelite in life. Be they never so kind, still, if the child shall live with Mr. Jennings and his wife, it will probably live in that community. Mrs. Nellie has been working elsewhere. Self-preservation for herself and the good of her child will or should carry her and her child away, and give both of them a chance to live a new life.

It seems to this Court that the best interest of the child demands that it be left in the custody of its mother, and the order appealed from is reversed.