SECURITIES AND EXCHANGE
COMMISSION

v.

William C. KINGSLEY, Island Hills Properties, Hilltop Properties, Waterlot Properties, T. A. B. Production Company, a/k/a T. A. B. Company, Island Planning Municipals, Inc., Island Planning Corporation of America, I. P. A. Planning Inc., Preferred Incomes, Inc., Edward A. Wagner, Murray Glantz.

Misc. No. 79–0147.

United States District Court,
District of Columbia.

Feb. 25, 1981.

Michael F. Perlis, Deborah S. Hechinger, Richard A. Stephens, Washington, D. C., for applicant.

David R. Melincoff, Nathan Lewin, Donald L. Herskovitz, Washington, D. C., for respondents.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

This comes before the Court on Application for Order to Show Cause and Order Requiring Obedience to Subpoenas Duces Tecum filed by the Securities and Exchange Commission (SEC). Jurisdiction to hear the matter is conferred upon the court pursuant to Section 22(b) of the Securities Act of 1933, 15 U.S.C. § 77v(b), and Section 21(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(c).

### I

The SEC issued a formal order of investigation directing a private investigation, *In the Matter of William C. Kingsley, C. B. Planning Services Corporation.* The order directed that an investigation be conducted to determine, among other things, whether Kingsley and others had violated or were about to violate the antifraud provisions of the Securities Act and Exchange Act and the broker-dealer registration provisions of the Exchange Act in connection with the offer and sale of interest in certain limited partnerships. Acting pursuant to the order, an officer of the SEC issued subpoenas duces tecum in order to take testimony and receive documents the SEC feels are related to and necessary for the completion of the investigation. The respondents have raised a number of objections to the subpoenas and the questions posed by the SEC and the request for documents. When those objections could not be resolved by the parties, the SEC applied to this court for enforcement.

The several issues presented are as follows: (1) Whether the information sought from respondents Edward Wagner and Murray Glantz is relevant and material, (2) whether the limited partnerships are entitled to a Fifth Amendment privilege against self-incrimination, (3) whether Kingsley can use the Fifth Amendment privilege to defeat production of limited partnership or corporate documents in his custody and control, (4) whether Kingsley has a valid Fourth Amendment objection to the production of subpoenaed limited partnership and corporate documents in his custody and control, and (5) whether Wagner and Glantz have properly asserted, pursuant to the direction of their client or former clients, the attorney-client privilege.

## II

The Court has given careful consideration to the arguments made in this matter and concludes that the requested order should issue.

Wagner and Glantz refused to answer a number of questions on the grounds that those questions fall outside the scope of the order. The Court concludes that their objections are without merit. The investigation is for a lawful purpose. "The evidence sought . . . [is] not plainly incompetent or irrelevant to any lawful purpose", *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943), and absent such a showing by the respondent, the subpoenas should be enforced. *See Securities and Exchange Commission v. Arthur Young & Co.*, 190 U.S. App.D.C. 37, 48, 584 F.2d 1018, 1029 (1978), cert. den. 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979). Respondents have failed to establish that the requested information is "plainly incompetent or irrelevant".

The respondents limited partnership seeks to assert a Fifth Amendment privilege against self-incrimination to prevent the production of subpoenaed limited partnership documents. This contention must also fail. The privilege is personal and while it would protect an individual, or a sole proprietorship, it does not protect a collective entity or papers held by an individual in his representative capacity for a collective entity. *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). *See also Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The SEC also seeks partnership and corporate papers in the possession of Kingsley, and thus his objection to production of those papers on Fifth Amendment grounds must also be denied.

In addition to asserting a Fifth Amendment privilege, Kingsley also poses a Fourth Amendment objection to the production of limited partnership and corporate documents in his control and custody. The Fourth Amendment requires that "the subpoena be sufficiently limited in scope, relevant to the purpose, and specifically directed so that compliance will not be unreasonably burdensome". *See v. City of Seattle*, 387 U.S. 541, 544, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967). *See also Securities and Exchange Commission v. Arthur Young & Co., supra*, U.S.App.D.C. at 42–43, 585 F.2d at 1023–1024. The subpoenas here meet the above criteria and are not overly broad. This contention therefore is without merit.

Finally, Wagner and Glantz have asserted an attorney-client privilege with respect to request for testimony and the production of documents. When such a privilege is asserted on behalf of the client or former client, the burden falls on the person asserting the privilege. He must establish that:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom a communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing either (i) an opinion of law or (ii) legal services of (iii) legal assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort, and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. United Shoe Mach. Corp.*, 89 F.Supp. 357, 358 (D.Mass.1950). *See also In Re Ampicillin Antitrust Litigation*, 25 F.R.Serv.2d 1248, 1252–65 (D.D.C.1978).

Up to this point respondents Wagner and Glantz have not met their burden. SEC is entitled to pursue examination directed to the issue as to whether Wagner and Glantz are entitled to assert the privilege, and with respect to those areas where the respondents fail in their burden, to require answers to questions and production of documents. The order proffered by SEC preserves that right and requires that Wagner and Glantz answer questions but provides that "nothing herein shall prohibit [Wagner and Glantz] from refusing to an-

swer questions by asserting and establishing a legally recognized privilege". This is equally applicable to Wagner's "conclusions, impressions or the operation of his mind". It may be, however, that respondent in stating his conclusions or impressions would necessarily draw upon information otherwise properly subject to the attorney-client privilege and that by answering that question he may violate the privilege. The proposed order permits Wagner to assert the privilege and affords him an opportunity to establish the legally recognized privilege, subject to examination relating to the privilege by SEC.

With respect to the 41 documents now being withheld by Wagner, SEC may pose the same questions and if the parties cannot ultimately resolve that issue, Wagner may present the documents to the Court for its *in camera* inspection. Those documents may not be presented, however, until Wagner has fully responded to the questions set forth under paragraph 5 of the Order.

## ORDER REQUIRING OBEDIENCE TO SUBPOENAS DUCES TECUM

Upon the Application of the U. S. Securities and Exchange Commission ("Commission"), pursuant to Section 22(b) of the Securities Act of 1933 [15 U.S.C. 77v(b)] and Section 21(c) of the Securities Exchange Act of 1934 [15 U.S.C. 78u(c)] for an Order Requiring the Respondents William C. Kingsley ("Kingsley"), Island Hills Properties, Hilltop Properties, Waterlot Properties, T. A. B. Production Company, a/k/a T. A. B. Company ("T. A. B. Production Company"), Island Planning Municipals, Inc., Island Planning Corporation of America, I. P. A. Planning Inc., Preferred Incomes, Inc., Edward A. Wagner ("Wagner"), and Murray Glantz ("Glantz"), (collectively referred to as "Respondents"), to comply with the subpoenas *duces tecum* duly issued and served by the Commission upon each respective Respondent, in connection with a private investigation conducted by the Commission, *In The Matter of William C. Kingsley, C. B. Planning Services Corporation,* and it appearing to the Court from the

Application for Order to Show Cause and Order Requiring Obedience to Subpoenas *Duces Tecum*, and all other pleadings filed and proceedings had herein, that Respondents have refused to comply with the requirements of the subpoenas *duces tecum* served upon them; and that the Commission is seeking relevant evidence for a lawfully authorized purpose, it is hereby:

ORDERED that the Commission's Application is hereby granted and that the Respondents are directed to comply with the subpoenas *duces tecum* issued by the Commission to them, as follows:

1. Respondents Island Hills Properties, Hilltop Properties, Waterlot Properties, T. A. B. Production Company, I. P. A. Planning Inc., Island Planning Corporation of America, Island Planning Municipals, Inc., and Preferred Incomes, Inc., must produce all documents in conformity with the subpoena *duces tecum* issued to each of them, respectively, at a time and place designated by the Commission. Nothing herein shall prohibit such Respondents from refusing to produce documents by asserting and establishing a legally recognized privilege, other than the Fifth Amendment privilege against self-incrimination.

2. Respondent Kingsley must produce all limited partnership and/or corporate documents in conformity with the subpoena *duces tecum* issued to him, at a time and place designated by the Commission. Nothing herein shall prohibit Kingsley from refusing to produce documents by asserting and establishing a legally recognized privilege, other than the Fifth Amendment privilege against self-incrimination and any privilege or claim under the Fourth Amendment.

3. Respondent Wagner must, at a time and place designated by the Commission, answer questions within the scope of the Commission's formal order of investigation, including questions calling for conclusions, impressions or the operation of the witness'

mind, and including, but not limited to questions concerning: (a) the nature and extent of the relationships between or among Kingsley, Kingsley's partnerships, Wagner, Glantz, Kurt Staub, and the sellers of films to Kingsley's partnerships; (b) the nature and extent of Wagner's experience, if any, as (i) a general partner, (ii) a representative of other movie limited partnerships, and (iii) a draftsman of offering circulars for other movie limited partnerships; (c) meetings between Wagner and others involving motion picture transactions; (d) a company called Pimago (or Primago) Ltd.; (e) the existence of any securities brokerage or bank (including Swiss) accounts in which he has an interest; (f) Wagner's telephone credit card number; and, (g) investments by Wagner in foreign corporations involving motion pictures. Nothing herein shall prohibit Wagner from refusing to answer questions by asserting and establishing a legally recognized privilege.

4. Respondent Glantz must, at a time and place designated by the Commission, answer questions within the scope of the Commission's formal order of investigation, including but not limited to questions concerning: (a) the existence of any securities brokerage or bank (including Swiss) accounts in which he has an interest; (b) whether Glantz keeps an appointment book or telephone log; (c) whether Glantz keeps a personal calendar; (d) whether Glantz is a controlling shareholder in any corporation; and, (e) whether Glantz has a copy of his Federal tax returns. Nothing herein shall prohibit Glantz from refusing to answer questions by asserting and establishing a legally recognized privilege.

5. In the event any refusal by Respondents Wagner or Glantz to answer questions and/or produce documents as directed above is predicated on the assertion of attorney-client privilege, such person so declining to answer questions and/or produce documents must establish the existence of an attorney-client privilege by, among other things, proffering all the essential elements thereof and setting forth factual details (that would not themselves waive the privilege) which would support such matters, including, among other things, answering the following questions:

(a) who prepared the document;

(b) who sent the document;

(c) to whom was the document sent;

(d) what was the date of the communication;

(e) what was the date on the document, or if none, the date the document was prepared, sent and/or received;

(f) who are the attorney and client involved;

(g) what was the nature of the document (i. e., memorandum, letter, telegram, etc., and generic subject matter);

(h) who are parties indicated on the document through carbon copy notations or otherwise who were to receive the document, and all parties that in fact received or saw the document;

(i) who was present during the communication;

(j) who are all parties to whom the substance of the communication was conveyed;

(k) would all of the communication, if disclosed to the staff, reveal or tend to reveal a communication from a client (made with the intention of confidentiality) to his attorney in connection with his seeking legal services or legal advice at a time when the attorney was retained by that client;

(*l*) would any segregable part of that communication not reveal or tend to reveal such a confidential communication;

(m) did a retention agreement between the attorney and client exist and if so, what is the date of such agreement;

(n) during what period of time did the attorney-client relationship exist;

(*o*) was a legal fee charged the client by the attorney in connection with the matter involving the communication; if so, how much, and how, when and by whom was it paid; if no fee was charged, was one discussed;

(p) what was the general nature of legal services rendered, and during what time period;

(q) did the communication primarily involve a business dealing between the attorney and client;

(r) did the communication involve the client's seeking business advice; and

(s) was the communication a grant of authority or instruction for the attorney to act upon.

IT IS FURTHER ORDERED that this Court shall take such steps as it deems necessary to ensure that the Respondents comply with the subpoenas *duces tecum*, and that this Court shall retain jurisdiction of this matter for all purposes necessary and appropriate to ensure compliance with this Order.*

* See Memorandum filed February 25, 1981.