0239

Carla J. MARSHALL, Respondent, v. Ronald K. MARSHALL, Appellant.

(320 S. E. (2d) 44)

Court of Appeals

*Daphne D. Sipes*, Tex., and *Thomas F. McDow*, Rock Hill, *for appellant.*

*Forrest C. Wilkerson*, of *Roddey, Carpenter & White*, Rock Hill, *for respondent.*

Heard May 14, 1984.

Decided Aug. 27, 1984.

SHAW, Judge:

This is a divorce action in which both parties sought custody of their two minor children. The family court judge granted a divorce to appellant Mr. Marshall and custody to respondent—Mrs. Marshall, and, allowed her to remove the children from South Carolina to Louisiana. We affirm.

The parties met at Louisiana State University. Mrs. Marshall is originally from Louisiana. They married in 1977 and moved to Mr. Marshall's home state of South Carolina. Two children were born of this marriage.

During the marriage, the parties lived on property owned by Mr. Marshall's mother. They lived in a river house for five months and a farm cabin for a little over three years. Neither of these places was in particularly good condition, especially the farm cabin. Mainly due to the poor condition of the farm cabin and Mr. Marshall's unwillingness and/or inability to provide suitable housing for his family, the parties separated on January 1, 1981.

At the separation, Mr. Marshall obtained custody of the children because Mrs. Marshall had no place to care for them. Mr. Marshall and the children moved in with his mother. Later in January, Mr. Marshall sent the children to Texas to live with his sister for ten days to thwart attempts by Mrs. Marshall to obtain custody.

During their separation and prior to the divorce hearing, Mrs. Marshall committed two acts of adultery which she denied at deposition but admitted at trial. At the trial, the judge refused to allow into evidence letters written to Mrs. Marshall from her attorney. Mr. Marshall found one letter in his truck. Mrs. Marshall's attorney had been routinely sending copies of his correspondence with Mrs. Marshall to her father, Mr. Charles L. Johnson, who was the surety for the payment of his daughter's attorney fees.

After granting the divorce to Mr. Marshall, the trial judge awarded custody of the children to Mrs. Marshall despite her adulterous behavior. He determined that Mrs. Marshall is more stable and independent than Mr. Marshall. He found Mr. Marshall to be not completely emancipated from his parents and family and considered his misconduct in hiding the children in Texas. The tender years doctrine was found to be applicable. Mrs. Marshall was given the right to take the children to Louisiana if she so desired, and Mr. Marshall was granted visitation rights.

Mr. Marshall appeals the trial judge's order claiming error in the refusal to allow into evidence the letter written by Mrs. Marshall's attorney, in the application of the tender years doctrine, and in the award of custody.

In equity actions such as this, the Court of Appeals has jurisdiction to find facts in accordance with its own views of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

Mr. Marshall claims the letters to Mrs. Marshall from her attorney are relevant to the issue of child custody. He also claims since the letters were published to third parties, him and Mr. Johnson, the attorney-client privilege was waived.

Any voluntary disclosure by a client to a third party waives the attorney-client privilege not only as to the specific communication disclosed but also to all communications between the same attorney and the same client on the same subject. *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146 (D.S.C. 1975); *U.S. v. Jones*, 696 F. (2d) 1069 (4th Cir. 1982).

Mr. Marshall came into possession of one letter when Mrs. Marshall returned his truck to have the license tag changed. She obviously left the letter in the truck through oversight and inadvertence and certainly did not intend for Mr. Marshall to see it. Under these circumstances, it can hardly be claimed Mrs. Marshall voluntarily disclosed the contents of this letter to her husband. The trial judge properly refused to admit the letter into evidence.

The copies of correspondence sent by Mrs. Marshall's attorney to her father present a different question. In order to establish the attorney-client privilege, it must be shown that the relationship between the parties was that of attorney and client and that the communications were of a confidential nature. *State v. Love*, 275 S. C. 55, 271 S. E. (2d) 110 (1980). The communication involved must relate to a fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding. *SEC v. Kingsley*, 510 F. Supp. 561 (D.C.D.C. 1981); *In Re Grand Jury Proceedings*, 517 F. (2d) 666 (5th Cir. 1975). The attorney-client privilege also applies to communications originating from the lawyer rather than from the

client. When the attorney communicates to the client, the privilege applies only if communication is based on confidential information provided by the client. *Brinton v. Department of State*, 636 F. (2d) 600 (C.A.D.C. 1980). The attorney-client privilege, though, does not protect communications with non-clients. *State v. Love, supra.*

To reach the conclusion the attorney-client privilege ▮▮ was not waived by the disclosure to Mrs. Marshall's father, we must first determine if Mr. Johnson, who as acting as a surety, became a client as a result of guaranteeing payment of his daughter's attorney's fees. A person attains the status of a "client" when that person seeks legal advice by communicating in confidence with an attorney for the purpose of obtaining such advice. *In Re Colocotronis Tanker Securities Litigation*, 449 F. Supp. 828 (S.D.N.Y. 1978). The legal advice or assistance must be sought from the attorney with a view to employing him professionally, whether or not actual employment results. *People v. Canfield*, 117 Cal. Rptr. 81, 12 Cal. (3d) 699, 527 P. (2d) 633 (1974).

Under this definition, Mr. Johnson is clearly not a ▮ client of his daughter's attorney. He did not seek legal advice or assistance in this matter, nor has he communicated in confidence with the attorney for the purpose of obtaining advice or with the view of employing him professionally. The fact he has guaranteed payment of the attorney's fees does not give rise to an employment relationship between him and the attorney. Mr. Johnson merely bound himself to pay his daughter's attorney's fees should she default upon that obligation. *Philco Finance Corp. v. Mehlman*, 245 S. C. 139, 139 S. E. (2d) 475 (1964).

In order to protect a communication on the ground of ▮▮▮ attorney-client privilege, it must appear that the attorney was acting, at the time, as a legal advisor. *Branden & Nether v. Gowing*, 7 Rich. 459 (S. C. 1854). Mrs. Marshall's attorney was acting only as an informant of the current state of Mrs. Marshall's lawsuit in writing to Mr. Johnson.

Mr. Marshall claims this evidence was relevant to the ▮▮▮ issue of child custody. Evidence is, of course, inadmissible unless it is relevant to some issue in the case being tried; relevancy of evidence means the logical relation between the proposed evidence and a fact to be established.

*Winburn v. Minnesota Mutual Life Ins. Co.*, 261 S. C. 568, 201 S. E. (2d) 372 (1973).

We have examined a letter found by Mr. Marshall in his ■ truck. The main thrust of this letter concerns what Mrs. Marshall's attorney hoped to get for her at the trial, what he believed Mr. Marshall would do to obtain evidence to present at the trial. There is nothing in the letter that would reflect on Mrs. Marshall's abilities as a parent or on what would be in the best interest of the children. We hereby determine that the letter is irrelevant.

Mr. Marshall next contends the trial judge erred in his application of the tender years doctrine. We disagree.

The controlling consideration in making the award of ■ custody of children is the welfare and best interest of the children. Section 21-21-10 of the 1976 South Carolina Code of Laws, as amended; *Ford v. Ford*, 242 S. C. 344, 130 S. E. (2d) 916 (1963). One of the various factors and circumstances to be considered in making this determination is the age, health and sex of the children, sometimes referred to as the "tender years doctrine". *Ford v. Ford, supra.* This doctrine does not require that the mother receive custody; it is merely one factor to be considered along with all the other evidence. *Green v. Loveday*, 270 S. C. 410, 242 S. E. (2d) 441 (1978).

The trial judge did not rely exclusively on the tender ■ years doctrine in awarding custody to Mrs. Marshall.

He carefully considered all the evidence presented concerning each party's ability to care for the children. The tender years doctrine was just another factor that entered into his consideration. This doctrine creates no presumption as to which parent is entitled to custody, and no such presumption was relied on by the trial judge. For the mother to receive custody under this doctrine, she must also be a competent, fit, and proper person to have custody. *Simons v. Simons*, 263 S. C. 509, 211 S. E. (2d) 555 (1975). There was no error in the use of this doctrine.

Finally, Mr. Marshall claims his wife is not the proper party to have custody of the children, and even if she is, the best interest of the children would be served by not allowing Mrs. Marshall to remove them from the state of South Carolina.

Mrs. Marshall admitted to engaging in adulterous be- ■■ havior. The morality of a parent is a proper consider-

ation in determining child custody but it is limited in its force to what relevancy it has, either directly or indirectly, to the welfare of the child. *Davenport v. Davenport*, 265 S. C. 524, 220 S. E. (2d) 228 (1975). The trial judge decided, and we agree, that this one fact is not sufficient to award custody to Mr. Marshall.

The trial judge found, and the record substantiates his findings, that Mr. Marshall was not the proper parent to have custody. Whenever he had the children, he would usually get a family member to care for them. This reluctance to care for the children himself weighs heavily against him. The trial judge's determination that he is not completely emancipated from his parents and family emotionally or financially is overwhelmingly shown by two facts—(1) during the entire marriage, the parties never rented or owned their own home; they always lived rent free in barely habitable quarters owned by Mr. Marshall's mother despite Mr. Marshall's advanced education, which should have provided him with the means to obtain suitable housing for his family, and (2) Mr. Marshall's misconduct in hiding the children after the separation. The trial judge did not believe the testimony concerning gross misconduct by Mrs. Marshall in front of the children. While this court is free to find facts based on our view of the preponderance of the evidence, the trial judge, who observes the witnesses and is in a better position to judge their demeanor and veracity, is given broad discretion. *McAlister v. Patterson*, 278 S. C. 481, 299 S. E. (2d) 322 (1982). Considering all of the evidence, including the young ages of the children, their best interest will be served by being in the custody of Mrs. Marshall.

Mr. Marshall objects to the trial judge's failure to prevent his wife from taking the children out of the state of South Carolina. As a rule, the presumption is against removal of the child. *McAlister v. Patterson, supra.* In situations where removal will benefit the child, removal has been allowed. *Dobson v. Atkinson*, 232 S. C. 12, 100 S. E. (2d) 531 (1957); *Watkins v. Rose*, 115 S. C. 370, 105 S. E. 738 (1921).

We see no abuse of discretion in this case. Initially, we note that a parent cannot be refused custody simply because he/she intends to take the child to a distant state. *Ex Parte Davidge*, 72 S. C. 16, 51 S. E. 269 (1905). This is just another factor to be considered by the trial judge. We

have already determined Mrs. Marshall to be the proper parent to have custody. Mrs. Marshall has no ties to the state of South Carolina other than her now ex-husband's family. Prior to marrying Mr. Marshall, Mrs. Marshall's whole life was in Louisiana. She has friends and family there who will provide the love, support, and attention to the children as would Mr. Marshall's family here. The best interest of the children will be served by allowing their mother to relocate in a state where she will have the greatest opportunity to build her new life and care for the children. *Jennings v. Anderson,* 114 S. C. 506, 104 S. E. 189 (1920).

Mr. Marshall's claim that the children should stay in South Carolina to have continuous contact with each parent is a proper one. However, at oral argument, it was disclosed that he had moved to Louisiana during the pendency of this appeal. His move to the very state where he objected to his wife taking the children mitigates against his argument to prevent removal from this jurisdiction. With both their father and mother in Louisiana, the children should have continuous contact with each parent.

Affirmed.

BELL and CURETON, JJ., concur.