24400

In the Matter of Kathleen P. JENNINGS, Respondent.

(468 S.E. (2d) 869)

Supreme Court

*Attorney General Charles Molony Condon* and *Senior Assistant Attorney General James G. Bogle, Jr.,* Columbia, *for complainant.*

*John P. Freeman* and *Nathan M. Crystal,* Columbia, *for respondent.*

Heard Feb. 7, 1996.

Decided Mar. 25, 1996; Reh. Den. Apr. 18, 1996.

*Per Curiam:*

This is an attorney disciplinary matter. Two Panel members recommended disbarment and one recommended an indefinite suspension. The Panel did not find misconduct for two allegations in the complaint. The Executive Committee adopted the Panel Report but found misconduct regarding all of the allegations. By a vote of 8 to 0, the Executive Committee recommended disbarment.[1] We find respondent's misconduct warrants disbarment.

## DISCUSSION

### Improper Billing

There are several allegations involving improper billing. Beginning in 1989, respondent began to send some of her work to an attorney, Tom Bruce. Bruce, a full-time employee of Legal Services in Greenville, did this work in his spare time to supplement his income. Respondent increased the number of hours or most often simply doubled the time spent by Bruce and billed these hours to her clients. For example, Bruce would work on a brief for two hours and respondent would bill a client for four hours.

Bruce submitted written bills with his work. Respondent wrote notes to her bookkeeper on these bills regarding how to

---

[1] One member did not participate.

bill for the time: "enter for 3 hours for me as my work" (Ex. C–(f)); "Pay Tom and bill under my name—double time to allow for me" (Ex. C–(h) and (r)); "Double his time as for me—pay him his actual time" (ex. C–(z)); "Enter for me doubled time" (Ex. C–(k)); "double to me" (Ex. C.–(aa)); "post as if my time and double time to cover time I spent w/Tom" (Ex. C–(cc)); "double for me" (Ex. C–(gg)); "double this for KPJ" (ex. C–(jj)); and "double to include me" (Ex. C–(mm)). In the record, there are 39 cases which reflect this billing practice.

Respondent testified she typically doubled the time which Bruce spent on a file to include her time for supervising and directing Bruce and finalizing the work. She also testified she frequently called Bruce from her home and, since she did not keep track of this time, she simply doubled his time as a rule of thumb. There are two examples in the record when respondent doubled his hours from 7 to 14 hours and from 4 to 8 hours. Bruce testified respondent sometimes called him at home but the calls rarely lasted longer than 15 minutes.

We find respondent's repeated practice of increasing or ■ doubling Bruce's hours when billing without justification amounts to misconduct. Like the Panel, we are convinced respondent did not spend even close to the amount of time she billed on these cases.[2] Further, guessing or using a fixed rule to double time is not a proper way to keep track of hours which are billed to clients.

## Destruction of Bruce Bills

The Board proceeded with copies of the Bruce bills obtained from Rhonda Boykin, an ex-employee of respondent's. The original bills were never located. The Panel and Executive Committee found respondent had destroyed the Bruce bills on February 8, 1994. Respondent contends the Panel and Executive Committee erred in making this finding. In its report, the Panel carefully weighed the evidence on this allegation and, after an in-depth discussion, concluded there was clear and convincing evidence respondent had destroyed the bills. We agree.

---

[2] There are several examples in the exhibits of Bruce's work hardly having been revised prior to being submitted under respondent's name. By everyone's account, respondent did not have to change much of Bruce's work as he did quality work. Her minor revisions did not justify billing twice the amount of time which he had expended.

The Panel's findings are entitled to great weight. *Matter of Lake*, 269 S.C. 170, 236 S.E (2d) 812 (1977). The Panel's finding and the concurrence of the full Board are advisory only and not binding upon the Court. These are, however, entitled to great respect, particularly when the transcript is lengthy and the inferences to be drawn from the testimony depend largely on the credibility of the witnesses which, of course, is assessed best by personal observation at the hearing. *In re Bloom*, 265 S.C. 86, 217 S.E. (2d) 143 (1975). *See also In re Friday*, 263 S.C. 156, 208 S.E. (2d) 535 (1974).

The following evidence was considered. After learning there was an investigation regarding the bills, Rhonda testified she copied the bills with Denise Newlan for fear something would happen to them. Newlan corroborated this. Further, Rhonda testified she gave respondent the bills on February 8th and saw respondent with a torn bill in her hand. Thereafter, she testified she heard tearing for 30-45 minutes coming from respondent's office. There was no evidence Rhonda had a motive or reason to lie.

Respondent gave Rhonda a $10,000 raise effective March 1, 1994. This reflected a 50% pay increase. Respondent contends this raise was for an increase in the workload because a paralegal, Denise Newlan, had quit. However, Rhonda was a secretary/bookkeeper and could not perform paralegal work. The pay raise coincided with a meeting which Rhonda testified took place between Rhonda, respondent, and an attorney. Rhonda had been urged to see this attorney by respondent. During her meeting with the attorney, Rhonda testified she told him about respondent's destruction of the Bruce bills. The next day respondent met with the attorney and Rhonda and respondent pled with Rhonda to reconsider what she had perceived to be the destruction of the bills. Respondent denies this meeting ever took place.

Respondent contends an ex-employee, Bobbie Langley, took the bills when she was fired nine month earlier in May 1993. However, both Rhonda and Denise Newlan testified they saw the bills and copied them on February 4, 1994. Respondent contends Langley could have gained access to her office at a later time and stolen the bills as part of an ill-will scheme against respondent. Respondent filed a police report on February 8, 1994, suggesting Langley had taken these files with

her when she left in May 1993. Other than respondent's bare allegations, there is no evidence to support this theory.

Respondent has the burden of showing the recommendation of the Panel and Executive Committee should not be followed by the Court. *In re Pride,* 276 S.C. 363, 278 S.E. (2d) 774 (1981). Here credibility of the witnesses is crucial in determining whether respondent destroyed the bills. The Panel was in a much better position to review credibility of the witnesses than this Court is on a cold record.[3] We conclude there is clear and convincing evidence to support a finding respondent destroyed the Bruce bill.

### Miscellaneous Billing

Respondent testified she would randomly pick a client to bill the Lexis subscription rate of $26.25 each month. She testified she billed this fee as an "overhead item." Respondent also testified Lexis was *not* used to research for these clients. Clearly, respondent should not have charged an overhead item to a client; particularly an overhead item from which the client received absolutely no benefit. Respondent's billing practice relieves her of the necessity of maintaining her office from her contingent fee, and the charges to the account by respondent constitute a fee. *Kentucky Bar Ass'n v. Graves,* 556 S.W. (2d) 890, 891 (Ky. 1977).

Respondent also billed clients $50.00 for the $35.00 process service fee. She justified this practice by stating she reviewed the process. Respondent also argues both of these billing practices were fair because she did not always charge her clients for other items. She points to several "No Charge" items on clients' bills. We so not think respondent can justify this billing practice by stating in the long run she did not overcharge her clients and, therefore, they were not financially harmed by it. We find respondent improperly charged these items to her clients.

Respondent was also accused of doubling a court reporter's bill. Although the Panel failed to find respondent had billed a client $136.00 for a $68.00 court reporter's bill, we agree with the Executive Committee's finding of misconduct. Respondent

---

[3] The Panel noted "it is based upon our observation of the demeanor, the candor, and the forthrightness of each witness which are most difficult to quantify or describe."

testified she did not know why the bill had been doubled, but speculated she charged for two transcripts. There was a note written in respondent's hand writing on the reporter's bill which stated: "please pay this but bill client's account $136.00." We agree there is clear and convincing evidence to support a finding respondent improperly charged her client twice the amount of the bill.

*Signing satisfaction of judgment*

Respondent represented Diane James in a proceeding seeking to increase alimony. When James initially entered into the fee agreement with respondent, James' father, Robert Roberts, signed as guarantor.

James's ex-husband, Gary Rank, owed Roberts $6,500 from a loan which Rank had failed to repay. An Ohio attorney obtained a judgment against Rank for Roberts. Thereafter, a check for $8,192.61 as satisfaction of the judgment was sent to respondent for Roberts. Respondent deposited this into her account on December 23, 1991. Respondent, however, did not take steps to satisfy the judgment. In October 1992, Rank's attorney inquired as to why respondent had failed to satisfy the judgment. Respondent immediately signed Roberts's name to the satisfaction of judgment form and filed it with the court. Respondent also signed the form as a witness and had her paralegal notarize the signatures.

Respondent attempted to justify her actions by stating Roberts had signed the fee agreement as guarantor. She contends the fee agreement was a power of attorney which gave respondent the authority to sign Roberts's name. Respondent herself repeatedly denied Roberts was her client and, furthermore, respondent did not follow the formalities which a power of attorney requires. Respondent also claims in the end Roberts ratified his signature and no one was damaged by her action. Even so, respondent's actions were improper under the Rules of Professional Conduct—this is not a civil action between the parties involved.

"The forgery of a signature on a court document is a fraud upon the court; we cannot conceive of any justification for such conduct." *In the Matter of McGuinn*, 272 S.C. 366, 252 S.E. (2d) 122 (1979). We find respondent's signing and notarizing Roberts's name was misconduct.

### Candor before the family court

Respondent represented Deanna Morse in an action seeking child support. However, paternity had not yet been determined. An initial temporary hearing was held before Judge Johnson on March 23, 1993. Since paternity had not been established and the defendant had not answered and was not present at the hearing, Judge Johnson refused to order child support. Respondent asked if she could request another temporary hearing after the expiration of 30 days. Judge Johnson told her she could take it up with Judge Kittredge, the administrative judge. During the second temporary hearing, respondent did not reveal that she had been before Judge Johnson the month before for a temporary hearing on the same issue. She stated she had never been denied child support even when paternity had not been established. She acknowledged the prior hearing only after Judge Kittredge asked her about the notes which Judge Johnson had made in the file during the prior hearing.

Respondent basically contends there was a misunderstanding about what exactly she was to take up with Judge Kittredge (i.e. the issue of whether to be allowed a second hearing or actually having a second hearing). Furthermore, respondent contends she thought Judge Johnson declined to rule on the child support issue; rather than declining to award child support. We think respondent was well aware of what was happening. The clerk of court testified respondent did not request a hearing in front of the administrative judge; it was just coincidence respondent was scheduled to appear before Judge Kittredge. The Panel failed to find misconduct by clear and convincing evidence. The Executive Committee, however, found misconduct. We agree with the Executive Committee and find respondent acted improperly in this matter.

### Family court order and lien for attorney's fees

Respondent represented Linda Abbott Bennett for approximately four months in 1992. A temporary hearing was held before Judge Spruill. Judge Spruill requested that respondent prepare an order reflecting what he had decided at the hearing. A proposed order was sent to Judge Spruill for his signature. The proposed order was not sent to opposing counsel. The order was signed and afterwards opposing counsel moved for reconsideration on the ground the

order contradicted what was decided at the hearing. Following a hearing on the motion, a new order was prepared and subsequently signed. Although there is no rule which requires respondent to send a proposed order to opposing counsel and the judge did not order respondent to do so, respondent was guilty of misconduct for preparing an order which misrepresented the judge's decisions.[4]

Respondent also filed a lien for unpaid fees against Bennett's property 17 days after filing a motion to be relieved as her counsel and on the same day the order granting that motion was signed. Respondent filed the lien pursuant to S.C. Code Ann. § 20-3-145 (1985).[5] This section is inapplicable because there was no order awarding respondent attorney's fees.[6] Respondent also charged Bennett for filing the lien which she justifies by claiming her retainer agreement provides for costs in the collection of fees. When Bennett sold her house, the closing attorney offered to place the amount in dispute into escrow until the fee dispute was resolved, but respondent refused. The Fee Resolution Board ultimately resolved this dispute by decreasing respondent's bill. The Panel and Executive Committee found respondent acted improperly by filing this lien. We agree.

*Investigation by Attorney General's Office*

Respondent contends the Attorney General's Office violated her rights to a fair hearing through improper investigation. Pursuant to ¶ 24(C), Rule 413, SCACR: "No investigation or procedure shall be held to be invalid by reason of any nonprejudicial irregularity or for any error not resulting in the miscarriage of justice. . . ." It is unnecessary for us to de-

---

[4] We note the Bench and Bar were cautioned to strictly observe the Canons governing judicial and attorney conduct with regard to ex parte contacts as they relate to maintaining the appearance of propriety and to comply with both the letter and the spirit of Opinion No. 2-1988 of the Advisory Committee of Standards of Judicial Conduct in *Burgess v. Stern*, 311 S.C. 326, 428 S.E. (2d) 880 (1993).

[5] This section provides: "In any divorce action any attorney fee awarded by the court shall constitute a lien on any property owned by the person ordered to pay the attorney fee and such attorney fee shall be paid to the estate of the person entitled to receive it under the order if such person dies during the pendency of the divorce action."

[6] The Court of Appeals recently held another lien filed by respondent under this section was invalid. *Huff v. Jennings*, 459 S.E. (2d) 886 (Ct. App 1995).

cide whether the investigation was improper because respondent has not pointed to any prejudice.

We find respondent violated Rule 407, SCACR, by ■ committing the following misconduct: dishonesty, deceit, and misrepresentation regarding the billing of several of her clients (Rule 8.4(d)); lack of candor toward a tribunal (Rules 3.3(a)(1) and 8.4(d)); billing time which respondent did not spend on a case (Rule 1.5(a)(1)); billing clients for services not actually rendered and overhead costs or increasing the costs (Rule 8.4(d)); destroying documents regarding the improper billing (Rules 8.4(d) and 8.4(e)); forging a signature on a satisfaction of judgment (Rule 8.4); misleading a family court judge (Rules 8.4(d) and 3.3); and improperly filing a lien for attorney's fees (Rules 3.4 and (8.4)).[7]

Respondent admits most of the conduct of which she is accused. However, she has explanations and excuses for her actions which she contends are not misconduct. We, however, find there is clear and convincing evidence to support the findings of misconduct.

"The purpose to be served by removing from the pro- ■ fession a person whose misconduct has proved him unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney is to protect the public and those charged with the administration of justice." *In the Matter of Baldwin*, 278 S.C. 292, 294 S.E. (2d) 790, 791 (1982) (quoting *In the Matter of Kennedy*, 254 S.C. 463, 176 S.E. (2d) 125, 126 (1970)).

It is our opinion that respondent's misconduct warrants disbarment. It is therefore ordered that respondent shall be disbarred from the practice of law in this state. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that she has complied with Paragraph 30 of Rule 413, SCACR, and shall surrender her certificate of admission to the Clerk of Court.

DISBARRED.

---

[7] Some of respondent's conduct occurred prior to the September 1, 1990, effective fate of Rule 407, SCACR, Rules of Professional Conduct. Therefore, prior Rule 32, Sup. Ct. Rules, Code of Professional Responsibility, applies to some misconduct.