**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

In Re: Estate of Norman Robert Knight, Jr., (deceased), Estate of Mildred C. Knight, (deceased), and Norman Robert "Bobby" Knight, III, Appellants,

v.

Beatrice E. Whitten, as a special administrator, and Chloe Knight-Tonney, Claimant, Respondents.

Appellate Case No. 2016-000748

_____

Appeal From Charleston County
J. C. Nicholson, Jr., Circuit Court Judge

_____

Unpublished Opinion No. 2018-UP-365
Submitted June 1, 2018 – Filed September 19, 2018

_____

**AFFIRMED**

_____

Jackson Seth Whipper, of Whipper Law Firm, of North Charleston, for Appellants.

Charles Mac Gibson, Jr., of Mount Pleasant, for Respondent Chloe Knight-Tonney.

Beatrice E. Whitten, of Mount Pleasant, pro se.

_____

**PER CURIAM:** In this appeal of an order granting Chloe Knight-Tonney's (Chloe's) claim against Norman Robert Knight, Jr.'s (Father's) Estate, Norman Robert Knight III (Bobby), Mildred C. Knight's (Mother's) Estate, and Father's Estate (collectively, Appellants) raise numerous issues, including whether the special administrator should have been removed for cause, whether Chloe was entitled to reimbursement for expenses paid for Father's care, and whether the probate court had proper jurisdiction over the matter. We affirm.

1. We find the lower courts erred by finding Chloe did not have to file a summons. Chloe filed her claim and petition for allowance of a claim in 2009, prior to the amendment of section 62-3-806(b) requiring the filing of a summons with a petition. However, at the time Chloe filed her petition, section 14-23-280 of the South Carolina Code and the South Carolina Rules of Civil Procedure (SCRCP) required her to file and serve a summons. *See* S.C. Code Ann. § 14-23-280 (2016) ("Proceedings in the court of probate may be commenced by petition or complaint to the judge of probate for the county to which the jurisdiction of the subject matter belongs, briefly setting forth the facts or grounds of the application. *A summons shall be issued to the defendants in such proceedings.*" (emphasis added)); Rule 81, SCRCP (providing the South Carolina Rules of Civil Procedure apply in probate court "to the extent they are not inconsistent with the statutes and rules governing [the probate court]"); Rule 3(a), SCRCP ("A civil action is commenced when the summons and complaint are filed with the clerk of court . . . .").

Appellants assert the lower courts lacked jurisdiction over them because Chloe failed to file or serve a summons. *See BB & T v. Taylor*, 369 S.C. 548, 551, 633 S.E.2d 501, 503 (2006) ("A court generally obtains personal jurisdiction by the service of a summons.); *Roche v. Young Bros. of Florence*, 318 S.C. 207, 209, 456 S.E.2d 897, 899 (1995) ("Rule 4, SCRCP[, the rule governing service of process,] serves at least two purposes. It confers personal jurisdiction on the court and assures the defendant of reasonable notice of the action."). However, we find Appellants waived any objection to the failure to file or serve a summons and to the lack of personal jurisdiction by (1) failing to raise the failure to file or serve the summons in their first motion to dismiss, (2) failing to raise the lack of personal jurisdiction in a motion to dismiss or in a responsive pleading, and (3) appearing and arguing the merits of the action multiple times before the probate court and the circuit court. *See* Rule 12(h)(1), SCRCP ("A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, insufficiency of service of process, or that another action is pending between the same parties for the same claim is waived (A) if omitted from a motion [made pursuant to Rule 12] or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment

thereof permitted by Rule 15(a) to be made as a matter of course."); *Stearns Bank Nat'l Ass'n v. Glenwood Falls, LP*, 373 S.C. 331, 337, 644 S.E.2d 793, 796 (Ct. App. 2007) ("Although a court commonly obtains personal jurisdiction by the service of the summons and complaint, it may also obtain personal jurisdiction if the defendant makes a voluntary appearance."); *see also Cheraw Motor Sales Co. v. Rainwater*, 125 S.C. 509, 513, 119 S.E. 237, 239 (1923) ("The next assignment of error is the refusal to dismiss the proceedings because there was no summons and complaint served. The defendant filed his answer and tried his case on the affidavit in attachment, and thereby waived his right to his motion."). Accordingly, we affirm as to this issue.

2. We find the Office of Court Administration (the Court Administration), on behalf of the Chief Justice, appropriately assigned Judge Mary Blunt and then Judge Kenneth E. Fulp to preside over this probate case because the other judges presiding over the case were recused or disqualified. *See* S.C. Const. art. V, § 4 ("The Chief Justice . . . shall have the power to assign any judge to sit in any court within the unified judicial system."); S.C. Code Ann. § 14-23-1010 (2016) ("The probate court of each county is part of the unified judicial system of this State."); S.C. Code Ann. § 14-23-1080 (2016) (providing where a probate judge must be recused from a case, "the Chief Justice of the [s]upreme [c]ourt shall appoint a special judge to sit in the matter"). We also find venue was proper because (1) based on a 2012 memorandum from the Court Administration, Judge Fulp, as a special probate judge, could properly hold hearings in either Beaufort, his own county, or Charleston, the county where the case originated; (2) Appellants withdrew their objection to venue during a December 17, 2013 hearing; and (3) Appellants' alleged objections to venue while Judge Blunt presided over the case are not included in the record. *See Harkins v. Greenville County*, 340 S.C. 606, 616, 533 S.E.2d 886, 891 (2000) (stating the appellants have the burden of providing this court with an adequate record); *Ex parte McMillan*, 319 S.C. 331, 335, 461 S.E.2d 43, 45 (1995) (providing an issue conceded in the trial court cannot be argued on appeal). Accordingly, we affirm as to this issue.

3. We find the probate court did not abuse its discretion by quashing Appellants' subpoena for the deposit and withdrawal records from 2004 to 2009 of the "Queenie" account because Chloe withdrew her claim for the $1,622.22 paid to the Bishop Gadsden nursing facility for Father's care that came from the account, rendering discovery of who deposited and withdrew money from the account irrelevant. *See Hollman v. Woolfson*, 384 S.C. 571, 577, 683 S.E.2d 495, 498 (2009) ("A trial [court's] rulings on discovery matters will not be disturbed by an appellate court absent a clear abuse of discretion."); *id.* ("Rule 26(b)(1), SCRCP, provides,

unless otherwise limited by order of the court, '[p]arties may obtain discovery regarding any matter, not privileged, which is *relevant* to the subject matter involved in the pending action . . . .'" (alteration in original) (emphasis added) (quoting Rule 26(b)(1), SCRCP)). Additionally, we find the issue of whether Chloe should have moved for a protective order of the information from the "Queenie" account is unpreserved for appellate review because Appellants did not raise this issue until on appeal to this court. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review.").

We find the probate court erred by finding the redaction in the letter from Thad Vincent, Father's attorney in the family court case and Chloe's attorney in the probate case, to Chloe and Walter Kaufmann, Father's guardian, was protected by attorney-client privilege because (1) the letter pertained to Father's attorney's fees in the family court case, not to any confidential information given to Vincent by Chloe; (2) Vincent provided no legal advice to Chloe in the letter; and (3) Vincent did not represent Chloe in the family court case. *See Marshall v. Marshall*, 282 S.C. 534, 539, 320 S.E.2d 44, 47 (Ct. App. 1984) ("When the attorney communicates to the client, the privilege applies only if communication is based on confidential information provided by the client."); *id*. ("The attorney-client privilege, though, does not protect communications with non-clients."); *id*. ("A person attains the status of a 'client' when that person seeks legal advice by communicating in confidence with an attorney for the purpose of obtaining such advice."). Nonetheless, the redacted material in the letter regarding who Vincent believed to be at fault for the "craziness involved" in the family court matter was not relevant to Chloe's claim for Father's attorney's fees; thus, we find Chloe did not have to provide the unaltered letter in discovery. *See Hollman*, 384 S.C. at 577, 683 S.E.2d at 498 ("Rule 26(b)(1), SCRCP, provides, unless otherwise limited by order of the court, '[p]arties may obtain discovery regarding any matter, not privileged, which is *relevant* to the subject matter involved in the pending action . . . . '" (alteration in original) (emphasis added) (quoting Rule 26(b)(1), SCRCP)). Accordingly, we affirm as to this issue.

4. Because Chloe's claim sounds in law, as the relief requested is for money due and the nature of her claim is akin to repayment of a personal loan to Father during his lifetime, we find the doctrine of unclean hands cannot apply to bar Chloe's claim. *Aaron v. Mahl*, 381 S.C. 585, 594, 674 S.E.2d 482, 487 (2009) ("The doctrine of unclean hands 'precludes a plaintiff from recovering **in equity** if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant.'"

(quoting *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 111 n.2, 531 S.E.2d 287, 294 n.2, (2000))); *id*. ("The equitable doctrine of unclean hands, however, has no application to an action at law."); *see also Matter of Howard*, 315 S.C. 356, 359, 362, 434 S.E.2d 254, 256, 258 (1993) (finding petition for allowance of claims for deceased's unpaid balance on loans from several family members was an action at law).

5. We find the probate court did not err by failing to recognize the automatic stay for appeals found in section 62-1-308(c) of the South Carolina Code (Supp. 2005)[1] because (1) Chloe did not file her creditor's claim until almost three years after the circuit court affirmed the probate court order appointing Kaufmann, and (2) the probate court orders appealed by Appellants did not address the administration of Father's estate because Father was still alive at the time of the orders and the appeal. *See* § 62-1-308(c) ("When an appeal according to law is taken from any sentence or decree of the probate court, all proceedings in pursuance of the order, sentence, or decree appealed from shall cease until the judgment of the circuit court, court of appeals, or [s]upreme [c]ourt is had."); *Ulmer v. Ulmer*, 369 S.C. 486, 492, 632 S.E.2d 858, 861 (2006) ("Section 62-1-308(c) does not apply to all orders of the probate court concerning the parties. The only proceedings required to cease are those proceedings addressed in the orders from which an appeal was taken."). Accordingly, we affirm as to this issue.

6. We find the lower court did not err by failing to apply the doctrine of fraud in the inducement to enter a contract as a bar to Chloe's claim because Mother did not prove Kaufmann's and Family Services Inc.'s, Father's conservator's, failure to inform Mother that Chloe would be covering the costs of some of Father's expenditures was a false representation intended to be acted upon by Mother. *See M. B. Kahn Constr. Co. v. S.C. Nat'l Bank of Charleston*, 275 S.C. 381, 384, 271 S.E.2d 414, 415 (1980) ("In order to recover in an action for fraud and deceit, based upon misrepresentation, the following elements must be shown by clear, cogent and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; (9) the hearer's consequent and proximate injury."); *id*. ("Failure to prove any one of the foregoing elements is fatal to recovery."). Accordingly, we affirm as to this issue.

7. We find the lower courts did not err by allowing Chloe's claim against the greater

---

[1] Although not relevant in this appeal, we note section 62-1-308(c) has been amended since the time relevant to this case. *See* § 62-1-308(c) (Supp. 2017).

weight of the evidence because (1) the proper standard of review of a probate court proceeding pertaining to an action at law is any evidence, and (2) evidence in the record supported the probate court's findings that Chloe's claims against Father's estate fell within the definition of claim found in section 62-1-201(4) of the South Carolina Code (Supp. 2017). *See* § 62-1-201(4) ("'Claims,' in respect to estates of decedents and protected persons, includes liabilities of the decedent or protected person whether arising in contract, in tort, or otherwise, and liabilities of the estate which arise at or after the death of the decedent or after the appointment of a conservator . . . ."); *Matter of Howard*, 315 S.C. at 361, 434 S.E.2d at 257 ("If the proceeding in the probate court is in the nature of an action at law, the circuit court may not disturb the probate court's findings of fact unless a review of the record discloses there is no evidence to support them."). Therefore, they were allowable in the amount of $23,914.73 plus 8.75% annual interest.

Here, the record shows Chloe provided evidence in the form of her testimony, receipts, bills, and letters from Father's attorneys, as well as the testimony of Kaufmann and Family Services, Inc. that the expenditures she made were for Father's benefit, were not intended to be a gift, and were made with Kaufmann and Family Services, Inc.'s approval. Further, the record reveals the order removing Mother as Father's guardian and conservator was appealed and affirmed, and Father—an incapacitated elderly man suffering from Alzheimer's disease—was removed from his home in compliance with an emergency order issued by the probate court after his independent, court-appointed guardian was denied visitation. The record further reveals at the time of his removal and after, Father did not have access to his possessions or funds because they were in Mother's control or were "tied-up" in litigation commenced by Mother against Father. Accordingly, evidence in the record supports the $23,914.73 plus 8.75% annual interest awarded to Chloe from Father's estate as reimbursement for her claim, and we affirm as to this issue.

8. We find Chloe timely filed her claim because she filed within eight months of the first published notice for creditors to present their claims and within a year of Father's death. *See* S.C. Code Ann. § 62-3-803(a) (2009) ("All claims against a decedent's estate which arose before the death of the decedent . . . are barred . . . unless presented within the earlier of the following dates: (1) one year after the decedent's death; or (2) within the time frame provided by . . . Section 62-3-801(a) [of the South Carolina Code (2009)] for all creditors barred by publication."); § 62-3-801(a) (providing a creditor must file a claim within eight months of the date the estate's personal representative first published notice in the newspaper for creditors to present their claims). Accordingly, we affirm as to this issue.

9. We find Appellants abandoned their argument that the lower courts erred by

holding Chloe satisfied the legal requirements for a case-in-chief because in making this argument, Appellants presented no facts or specific law, citing only "S.C. Code Ann. § 62-3-801, et seq. (1980)," which arguably could be construed as a citation to the entire probate code. *See In re McCracken*, 346 S.C. 87, 92, 551 S.E.2d 235, 238 (2001) (holding an issue is deemed abandoned if the argument in the brief is not supported by authority or is only conclusory), *modified on other grounds by Matter of Chapman*, 419 S.C. 172, 796 S.E.2d 843 (2017).

10.  We find the lower courts did not err by reimbursing Chloe for attorney's fees resulting from the family court matter and granting her full interest on the judgment. We note Appellants' argument that the holdings in *Matter of Jennings*[2] and *Huff v. Jennings*[3] show Chloe's claim for attorney's fees is not valid because there was no order by the family court awarding fees.  However, Chloe is not a lawyer attempting to collect unpaid fees, nor is she attempting to place a lien on property under section 20-3-145; accordingly, the holdings in *Huff* and *Matter of Jennings* are inapposite to whether Chloe is entitled to repayment for the money she expended on Father's representation in family court.  Further, we find the probate court did not err in awarding Chloe repayment for the money she expended on Father's legal services in the family court because there was evidence in the record supporting its conclusion that the attorney's fees were allowable claims against Father's estate.  *See Matter of Howard*, 315 S.C. at 361, 434 S.E.2d at 257 (proscribing any evidence standard of review for a probate court action at law).  Accordingly, we affirm as to this issue.

11.  We affirm the denial of Bobby's petition to remove Beatrice Whitten as special administrator because he did not provide an adequate record to complete appropriate judicial review of this issue.  *See Harkins*, 340 S.C. at 616, 533 S.E.2d at 891 (providing the appellants have the burden of providing an adequate record on

---

[2] 321 S.C. 440, 449 n.5, 468 S.E.2d 869, 875 n.5 (1996) (finding an attorney improperly filed a lien on property belonging to her client pursuant to section 20-3-145 of the South Carolina Code (2014), which allows an award of attorney's fees to "constitute a lien on any property owned by the person ordered to pay the attorney fee" because section 20-3-145 is not applicable where the court did not award attorney's fees  (quoting § 20-3-145)).

[3] 319 S.C. 142, 145–47, 459 S.E.2d 886, 889–90 (Ct. App. 1995) (finding an attorney's practice of filing liens on property belonging to her clients when they failed to pay their bills was not statutorily authorized because section 20-3-145 allowed a lien for attorneys' fees only when an order by the family court awarded the fees).

appeal).

**AFFIRMED.**[4]

**SHORT, THOMAS, and HILL, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.