683 S.E.2d 495

John HOLLMAN, Respondent,

v.

Dr. Jonathon WOOLFSON, individually; TLC Laser Eye Centers (Piedmont/Atlanta) LLC; TLC The Laser Center (Institute), Inc; Dr. Michael A. Campbell, individually; Optical Solutions, Inc.; and Optical Solutions of Bluffton, LLC, Defendants,

of whom Dr. Jonathan Woolfson, TLC The Laser Center (Institute), Inc., TLC Laser Eye Centers (Piedmont/Atlanta) LLC are Petitioners

and

Danielle Hollman, Respondent,

v.

Dr. Jonathon Woolfson, individually; TLC Laser Eye Centers (Piedmont/Atlanta) LLC; TLC The Laser Center (Institute), Inc; Dr. Michael A. Campbell, individually; Optical Solutions, Inc.; and Optical Solutions of Bluffton, LLC, Defendants,

of whom Dr. Jonathan Woolfson, TLC The Laser Center (Institute), Inc., and TLC Laser Eye Centers (Piedmont/Atlanta) LLC are Petitioners

and

George E. Carter, Jr., and Jean Carter, Respondents,

v.

TLC Laser Eye Center (Institute), Inc. f/k/a TLC The Laser Center (Piedmont), Inc., Petitioner.

No. 26725.

Supreme Court of South Carolina.

Submitted Sept. 2, 2009.

Decided Sept. 21, 2009.

574

W. Howard Boyd, Jr., Ronald G. Tate, Jr., and J. Matthew Whitehead, of Gallivan, White & Boyd, PA, of Greenville, for Petitioners TLC The Laser Eye Center (Institute), Inc. and TLC Laser Eye Centers (Piedmont/Atlanta) LLC; George C. Beighley and Mason A. Summers, of Richardson Plowden & Robinson, P.A., for Petitioner Woolfson.

Douglas F. Patrick and Stephen R.H. Lewis, of Covington, Patrick Hagins, Stern & Lewis, P.A., of Greenville; James Walter Fayssoux, Jr., and Paul S. Landis, of Anderson Fayssoux & Chasteen, of Greenville, for Respondents.

PER CURIAM.

Petitioners have filed a petition for a writ of certiorari seeking review of an order of the circuit court allowing respondents to contact nonparty patients of petitioners. We grant the petition, dispense with further briefing, and vacate the order of the circuit court.

This matter involves three actions filed against petitioners for medical malpractice, fraud, and breach of contract arising out of LASIK eye surgeries. By order dated November 14, 2008, the circuit court compelled petitioners to respond to respondents' discovery requests, including the production of the medical records of several nonparty patients treated at petitioners' facilities. At the same time, a Protective Order was issued to prohibit the use of confidential information obtained through the medical records and to prohibit any person from contacting the nonparty patients or their medical providers. Petitioners complied with the orders and provided unredacted copies of the medical records of the nonparty patients.

On February 17, 2009, respondents filed a motion to modify the Protective Order to allow them to contact and interview nonparty patients of petitioners whose identity and medical records were disclosed pursuant to the November 14th order. By order dated April 21, 2009, the circuit court found respon-

dents were entitled to interview the nonparty patients subject to the privacy safeguards set forth in the Protective Order.

Petitioners first sought a writ of certiorari to review the April 21st order. This Court granted the petition for a writ of certiorari and remanded the matter to the circuit court to address whether the interviews with the nonparty patients were necessary to respondents' claims. *Hollman v. Woolfson*, Op. No.2009–MO–025 (S.C. Sup.Ct. filed May 28, 2009).

On remand, the circuit court found the interviews were necessary for respondents' fraud cause of action, Unfair Trade Practices Act (UTPA) cause of action, and in order for respondents to meaningfully respond to petitioners' defenses of the statute of frauds and the statute of repose. Petitioners now seek another writ of certiorari to review the decision of the circuit court.

 A writ of certiorari may be issued to review a discovery order where exceptional circumstances exist. *Laffitte v. Bridgestone Corp.*, 381 S.C. 460, 674 S.E.2d 154 (2009). This matter presents exceptional circumstances which warrant the issuance of a writ of certiorari. Allowing the interviews will moot any claim petitioners could raise on appeal that the discovery was erroneously allowed. In addition, the privacy rights of patients is an issue of significant public interest, and issues involving the release of patient information in discovery is arising more often in the courts. Accordingly, we grant the petition for a writ of certiorari and dispense with further briefing.

 On certiorari, this Court will review only errors of law and will not review factual findings unless wholly unsupported by the evidence. *S.C. Bd. of Exam'rs in Optometry v. Cohen*, 256 S.C. 13, 180 S.E.2d 650 (1971). A trial judge's rulings on discovery matters will not be disturbed by an appellate court absent a clear abuse of discretion. *Dunn v. Dunn*, 298 S.C. 499, 381 S.E.2d 734 (1989).

 Rule 26(b)(1), SCRCP, provides, unless otherwise limited by order of the court, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... It is not ground for objection that the information sought will be

inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." If the discovery process threatens to become abusive or create a particularized harm to a litigant or third party, the trial judge may issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden by expense." Rule 26(c), SCRCP; *Hamm v. S.C. Pub. Serv. Comm'n*, 312 S.C. 238, 439 S.E.2d 852 (1994). If a person requesting a protective order shows a particularized harm which will be caused by allowing the discovery, the opposing party has the burden of showing the information sought is "relevant and necessary" to the case. *Laffitte v. Bridgestone Corp., supra; Hamm v. S.C. Serv. Comm'n, supra.* In determining whether a protective order is necessary, the trial judge is required to weigh the factors of whether the information sought is "relevant and necessary" evidence against any particularized harm the opposing party may suffer. *Laffitte v. Bridgestone Corp., supra; Hamm v. S.C. Pub. Serv. Comm'n, supra.* In determining whether information is necessary, the party seeking the information must "demonstrate with specificity exactly how the lack of information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat." *Laffitte v. Bridgestone Corp.*, 674 S.E.2d at 163. The trial court must determine whether there are reasonable alternatives available to discover the information. *Id.*

 As to the requirement of particularized harm, no protective device can limit the invasion of the nonparty patients' privacy once contact with them is permitted. The nonparty patients have a valid and legitimate expectation that their medical information will remain confidential which outweighs respondents' intent to use this personal information to buttress their claims by showing a propensity by petitioners for malpractice. Petitioners have shown particularized harm to the nonparty patients which will arise if the interviews are permitted. Both the State and Federal government have recognized the importance of the privacy rights of patients. Therefore, respondents must show the information sought from the interviews is relevant and necessary to the case.

As to the requirement that the information sought be relevant, this Court has held the information must be specifically relevant to the issues involved in the litigation, not merely relevant to the subject matter of the litigation. *Laffitte v. Bridgestone Corp. supra.*

■ The circuit court judge found respondents' "methodology by which [they have] restricted its interview requests provides a substantial basis for the relevancy." He found "the ability to interview [the nonparty patients] and discuss their individual experiences at TLC along with those of [respondents] is relevant under Rule SCRCP 26[sic] and permissible except to the extent that good cause exists to restrict discovery of this information and these witnesses." The judge further found the information sought was directly related to the issues central to respondents' malpractice claims. He stated the discovery of other patients with problems and treatment similar to respondents' problems is clearly relevant since a central issue in the malpractice claims is "the applicable standard of care as it evolved during and after the time of [respondents'] surgeries."

■ A claim for malpractice requires a showing of the standard of care, a breach of the standard of care, proximate cause, and damages. *Doe v. Am. Red Cross Blood Servs.*, 297 S.C. 430, 377 S.E.2d 323 (1989). The standard of care which must be observed by a physician is that of an average, competent practitioner acting in the same or similar circumstances. *Id.*

The evidence relating to treatment of the nonparty patients is irrelevant to respondents' negligence claims in that it cannot be used to show petitioners breached the standard of care with a particular patient. Accordingly, the circuit court erred in finding the interviews with the nonparty patients were relevant to the causes of action for malpractice. Whether petitioners breached the standard of care with any patients other than respondents is irrelevant to whether petitioners were negligent in their treatment of respondents.

■ A cause of action for fraud requires: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of the falsity of the representation or reckless

disregard of its truth or falsity; (5) the intent that the representation be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely on the representation; and (9) the hearer's consequent and proximate injury. *Schnellmann v. Roettger*, 373 S.C. 379, 645 S.E.2d 239 (2007).

There is no evidence that any of the nonparty patients were victims of fraud. The treatment received by the nonparty patients is irrelevant to respondents' causes of action for fraud. Whether other patients were similarly treated does not prove any of the elements required to show fraudulent conduct by petitioners toward respondents.

 To establish a cause of action under the UTPA, the plaintiff must prove unfair or deceptive acts or practices in the conduct of any trade or commerce. S.C.Code Ann. § 39–5–20(a) (1985). The unfair or deceptive act or practice must affect the public interest. *Singleton v. Stokes Motors, Inc.*, 358 S.C. 369, 595 S.E.2d 461 (2004). An impact on the public interest may be shown if the acts or practices have the potential for repetition. *Id.* The potential for repetition may be proven by showing: (1) the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) the defendant's procedures created a potential for repetition of the unfair and deceptive acts. *Id.*

Although evidence of petitioners' treatment of nonparty patients could be relevant for the UTPA cause of action, as discussed below, the evidence is not necessary for respondents to establish that cause of action.

In determining whether information is necessary, the party seeking the information must "demonstrate with specificity exactly how the lack of information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat." *Laffitte v. Bridgestone Corp.*, 674 S.E.2d at 163. The trial court must determine whether there are reasonable alternatives available to discover the information. *Id.*

The circuit court found that respondents allege petitioners engaged in a corporate-wide scheme to conceal the harm done to respondents and other patients and to delay the disclosure

of crucial information beyond the applicable statutes of limitations and/or repose. The judge found the information sought from other patients is necessary because the alleged scheme is based on the institutional quality of petitioners' knowledge of the falsity of their representations and their knowledge that the representations would be relied on by a significant number of patients. However, the circuit court failed to make specific findings as to how the lack of information would impair respondents' case.

Respondents may pursue their claims against petitioners without interviewing petitioners' nonparty patients. Respondents failed to demonstrate with specificity what information they seek or how the lack of interviews with the nonparty patients will impair the presentation of their case to the extent that an unjust result is a real threat. Further, there is no evidence that there are no other reasonable alternatives available to respondents to discover the information they seek from the nonparty patients.

The circuit court committed an abuse of discretion in determining the interviews with the nonparty patients were necessary. Petitioners' treatment of other patients is not necessary to establish any element of respondents' causes of action. In fact, no information obtained in the interviews could establish whether petitioners breached the standard of care when treating respondents or committed fraud on respondents. As to the UTPA cause of action, the circuit court did not make a specific finding as to exactly how the lack of information obtained from the interviews would impair respondents' presentation of the merits of that cause of action or that there were no reasonable alternatives available to discover the information. *Laffitte v. Bridgestone Corp., supra.* Accordingly, the record does not support the finding that the interviews are necessary for the UTPA cause of action.

Further, it would be inequitable to allow respondents to obtain nonparty patient information from petitioners with the understanding the patients would not be contacted, only to subsequently permit respondents to contact the patients. Had the provision of the Protective Order prohibiting respondents from contacting petitioners' patients not been included, there is a possibility petitioners would not have disclosed the patient

records, would have sought to redact the records, and/or would have sought review of the order requiring the disclosure by writ of certiorari or by refusing to comply with the order and appealing a contempt citation. Therefore, the order of the circuit court allowing respondents to interview the nonparty patients is

**VACATED.**

TOAL, C.J., WALLER, PLEICONES, BEATTY and KITTREDGE, JJ., concur.