692 S.E.2d 920

ONCOLOGY AND HEMATOLOGY ASSOCIATES OF S.C.,
LLC, d/b/a Cancer Center of the Carolinas, Petitioner,
and U.S. Oncology Inc., Intervenor, Petitioners,

v.

SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVI-
RONMENTAL CONTROL and Spartanburg Regional Health-
care System, d/b/a The Village at Pelham Cancer Center, Re-
spondents.

No. 26814.

Supreme Court of South Carolina.

Heard Feb. 18, 2010.

Decided May 3, 2010.

Lewis T. Smoak, of Ogletree, Deakins, Nash, Smoak & Stewart, of Greenville, and Raymon E. Lark, Jr., of Austin & Rogers, of Columbia, for Petitioners.

Stuart M. Andrews, Jr., Travis Dayhuff, Alice V. Harris, and Holly G. Gillespie, all of Nelson, Mullins, Riley & Scarborough, of Columbia, for Respondents.

Justice KITTREDGE.

We granted a writ of certiorari to review a series of discovery orders of the administrative law court (ALC). S.C. Const. art. V, § 5. We vacate the ALC's discovery orders and remand.[1]

## I.

The parties in this case are fiercely competitive healthcare providers in upstate South Carolina. The primary parties, Petitioner Oncology and Hematology Associates of South Carolina, d/b/a Cancer Centers of the Carolinas (CCC), and Respondent Spartanburg Regional Healthcare System (SRHS), are licensed to provide linear accelerator[2] services in adjoining service areas.[3] CCC is a private physician group, and

1. In challenging the discovery orders, Petitioners initially combined their writ of certiorari with a writ of supersedeas and a notice of appeal. We dismissed the notice of appeal from the discovery orders as interlocutory and not immediately appealable. We determined exceptional circumstances existed, warranting the grant of a writ of certiorari.

2. A linear accelerator is used by radiation oncologists to provide external radiation treatments to cancer patients.

3. CCC is licensed by DHEC to provide linear accelerator services in the service area that includes Greenville, Pickens, and Oconee Counties,

SRHS is a public entity. CCC and SRHS compete with each other primarily for cancer patients who reside in proximity to the Greenville–Spartanburg County line. The underlying dispute concerns CCC and SRHS vying for cancer patients in Greer, South Carolina. Part of Greer is located in Spartanburg County and part of Greer is located in Greenville County.

In August 2007, SRHS submitted a Certificate of Need (CON) application to the South Carolina Department of Health and Environmental Control (DHEC) asking to relocate one of its linear accelerators from the Gibbs Regional Cancer Center in Spartanburg to its Village of Pelham Cancer Center in Greer. The Village of Pelham is located on the Spartanburg County side of Greer. Four miles away, CCC operates a linear accelerator at the Greenville Hospital System (GHS) facility on the Greenville County side of Greer.

The Greer community is viewed as fertile territory for providing treatment to cancer patients. Both CCC and SRHS seek to maximize utilization of their respective linear accelerators in the Greer community. Despite CCC's protest, DHEC staff recommended approval of SRHS's request to relocate one of its linear accelerators from the Gibbs Regional Cancer Center to Greer. The DHEC Board approved the staff's recommendation and granted the CON to SRHS.[4]

CCC requested a contested case hearing before the ALC to challenge DHEC's approval of the CON.[5] In its petition, CCC contended SRHS's application to relocate its linear accelerator, and DHEC's review process, had failed to address significant criteria required by the 2004–2005 South Carolina Health Plan. CCC asserted: "The DHEC Board similarly erred by failing to grant CCC's request for final Board review and [to]

---

while SRHS is licensed to provide linear accelerator services in the adjoining service area comprised of Spartanburg, Cherokee, and Union Counties.

4. DHEC staff found SRHS had established that the relocation of its linear accelerator would serve its current patient population, provide a more convenient location for existing patients, and relocation was financially viable. DHEC additionally determined that SRHS's proposed relocation would not adversely affect other facilities in the service area.

5. DHEC takes no position on CCC's challenge to the ALC's discovery orders.

reverse DHEC Staff's approval letter for SRHS's CON application." CCC unsuccessfully sought to vacate the CON and to remand the matter to DHEC.

SRHS responded to CCC's challenge by inundating it with discovery requests.[6] Rather than tailoring discovery to the challenged CON, which addressed only the relocation of a linear accelerator to the Greer location, SRHS took a shotgun approach and sought virtually all information concerning every facet of CCC's operation. The following is a sampling of the information SRHS sought from CCC by way of requests for production (RFP) and interrogatories:

**RFP 6:** Produce all business plans, pro formas, market analyses, strategic plans, and projections and/or forecasts of any kind for all of CCC's locations in the Anderson, Greenville, Cherokee, Oconee, Union, Pickens, and Spartanburg County areas from 2006 forward.

**RFP 7:** For each of the following years, 2005, 2006, 2007, and 2008 ... produce information and documents in an electronic Excel compatible format (with patient-identifying information redacted) identifying by each such year at each CCC location in the Anderson, Greenville, Cherokee, Oconee, Union, Pickens, and Spartanburg County areas by location:

1. the number of linear accelerator procedures performed;
2. the date of service for each procedure;
3. the CPT code, HCFA Common Procedure Code System (HCPCS) designation, ICD–9, DRG, and Ambulatory Procedure Code (APC) for each such procedure;
4. the physician or P.A. who performed each such procedure;
5. the charge, payor category, and payment for each such procedure;
6. the Zip Code and county of the patient who received each such procedure; and
7. the referring physician for each patient.

**RFP 8:** For each of the following years, 2005, 2006, 2007, and 2008 ... and for each of the 24 physicians referenced

---

6. Likewise, CCC served SRHS with discovery requests. There is no issue before us concerning CCC's discovery requests.

on page 299 of the DHEC record and for all other physicians that are now or will be affiliated in any way with CCC, produce information and documents in an electronic Excel compatible format (with patient-identifying information redacted) identifying by each such year at each CCC location in the Anderson, Greenville, Cherokee, Oconee, Union, Pickens, and Spartanburg County areas by location and by physician:

1. the number of linear accelerator [ ] procedures referred to each specific location;
2. the date of service for each procedure;
3. the CPT code, HCFA Common Procedure Code System (HCPCS) designation, ICD–9, DRG, and Ambulatory Procedure Code (APC) for each such procedure;
4. the physician or P.A. who performed each such procedure;
5. the gross charge, payor category, and net payment for each such procedure;
6. the Zip Code and county of the patient who received each such procedure; and
7. the referring physician of the patient who received each such procedure.

**RFP 23:** [Produce] [c]opies of all strategic plans for CCC and USO[7] [U.S. Oncology, Inc.] from the last five years to the present.

**RFP 24:** [Produce] [a]ll communications to or from CCC or USO related to the development of strategic plans from the last five years to the present.

**RFP 26:** [Produce] [c]opies of each single budget for CCC for each location and consolidated from each of the past five years to the present.

**Interrogatory 16:** Describe in detail all aspects of CCC's 'partnership with GHS' referenced on page 299 of the DHEC record, including all financial aspects to the partnership.

**Interrogatory 18:** Identify all agreements, contracts, written understandings, leases, subleases, and all other forms of

---

7. USO is an entity affiliated with CCC. Because of the reach of SRHS's discovery requests, USO has intervened in this matter.

written arrangements between the following parties, including a description of the arrangement and date of the arrangement:

 a. CCC and [USO] and/or any entity affiliated with USO.

 b. CCC and any physicians affiliated in any way with CCC.

 c. USO and any physicians located in South Carolina who are affiliated in any way with USO.

 d. CCC and [GHS] and/or any entity affiliated with [GHS].

 e. USO and [GHS] and/or any entity affiliated with [GHS].

 f. CCC and any other individual or entity related to the provision of linear accelerator services.

**Interrogatory 29:** Provide the number of patients treated with linear accelerators owned, operated, leased, and/or in any way connected to CCC for calendar years 2005, 2006, 2007, 2008, and 2009 to date by linear accelerator.

CCC responded to some discovery requests and produced voluminous information and documentation to SRHS. As to the discovery requests CCC found objectionable, it contended the information sought was overbroad, overly burdensome, protected by work-product doctrine, or irrelevant to the pending matter. CCC additionally asserted that it would be harmed competitively if required to provide SRHS with confidential information that revealed contracts and rates it had negotiated with other organizations. Moreover, CCC maintained that the presence of a protective order did not transform irrelevant material into relevant material.

SRHS moved the ALC to compel CCC to fully respond to its discovery requests. SRHS contended that "each of the contested interrogatories ... identify subjects that are relevant and necessary for [SRHS] to explore in order to assess the merits of this litigation." CCC provided supplemental responses to SRHS's discovery requests, and again contended it had furnished reasonable and complete responses. CCC asked the ALC to deny SRHS's motion to compel further discovery, stating:

 While CCC acknowledges the scope of discovery is generally broad, in the instant case both SRHS and the Court

itself have taken positions, which clearly impose limitations on the discovery propounded by SRHS for which it now seeks to compel provision of additional responses and information from CCC. CCC takes very seriously proper discovery in an administrative contested case for development of issues, and CCC is concerned about and objects to SRHS's tactics.

*SRHS is intentionally over-reaching and attempting to game the contested case proceeding before the Court herein in order to further its own goals of damaging CCC as a competitor and of expanding its competitive market influence in physician referrals and provision of radiation and medical oncology services in Upstate South Carolina.* Such actions are extremely inappropriate. CCC is confident the Court will readily agree and not permit SRHS to abuse the process. (Emphasis added).

At the hearing on SRHS's motion to compel discovery, SRHS complained about CCC's meddling efforts to challenge the CON for, as the ALC put it, "just moving one machine to a different place."

**The Court:** You're saying in other words they asked for it?

**[SRHS]:** That's right. Yeah. Yeah. And there's a cost to jumping in and that's part of the cost.

Although the ALC referred to SRHS's discovery requests as a "fishing expedition," the ALC ultimately granted SRHS's motion to compel.

Following the hearing, but prior to the issuance of the order, SRHS served USO with a subpoena duces tecum requesting documents related to its relationship with GHS and CCC. Thereafter, USO moved to intervene for the limited purpose of addressing the discovery matters before the ALC. The ALC conducted another hearing, after which it issued five orders: (1) order denying CCC's motion to quash the subpoena served on GHS; (2) order denying USO's and CCC's motions to quash the subpoena served on USO; (3) order denying CCC's motion for reconsideration of the ALC's prior discovery rulings; (4) order granting USO's request to intervene for the limited purpose of challenging the discovery orders; and (5) order compelling CCC to respond to SRHS's first and second interrogatories and requests for production.

The ALC's order explained: "I find these materials to be well within the generally recognized parameters of Rule 26(b) in that the requests are reasonably calculated to lead to the discovery of admissible evidence." Moreover, the ALC found the confidentiality order already in place protected CCC from the misappropriation of confidential information by SRHS.

This case concerns the five interlocutory orders issued by the ALC.

## II.

 "The Supreme Court shall have power to issue writs or orders of injunction, mandamus, quo warranto, prohibition, certiorari, habeas corpus, and other original and remedial writs." S.C. Const. art. V, § 5. "A trial judge's rulings on discovery matters will not be disturbed by an appellate court absent a clear abuse of discretion." *Hollman v. Woolfson*, 384 S.C. 571, 577, 683 S.E.2d 495, 498 (2009) (citing *Dunn v. Dunn*, 298 S.C. 499, 381 S.E.2d 734 (1989)). "A writ of certiorari may be issued to review a discovery order where exceptional circumstances exist." *Id.* at 577, 683 S.E.2d at 498 (citing *Laffitte v. Bridgestone Corp.*, 381 S.C. 460, 674 S.E.2d 154 (2009)). Exceptional circumstances exist in this challenge to the ALC's discovery orders.

## III.

 CCC contends the information and documents required under the discovery orders are not remotely relevant to resolution of the issue before the ALC. We agree.

We are keenly aware that the scope of discovery is broad. Rule 26(b)(1), SCRCP, provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... [and][i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Yet, there are limits, which we see trial courts generally unwilling to recognize and enforce. SRHS's discovery requests of CCC and its business partners are abusive and beyond the pale.

Our willingness to review a discovery order by way of a writ of certiorari will be as rare as the proverbial "hen's tooth." We have no desire to micromanage discovery orders. It is our hope that in resolving this matter, we will speak to trial courts generally. While discovery serves as an important tool in the truth-seeking function of our legal system, we are concerned that "discovery practice" has become a cottage industry and the merits of a claim are being relegated to a secondary status.

We find persuasive a decision of the Texas Supreme Court in a similar situation. *See In re CSX Corp.*, 124 S.W.3d 149 (2003). The Texas Supreme Court granted a party mandamus relief from discovery requests the court determined were overly broad and irrelevant to resolution of the dispute at hand:

Generally, the scope of discovery is within the trial court's discretion. However, the trial court must make an effort to impose reasonable discovery limits. The trial court abuses its discretion by ordering discovery that exceeds that permitted by the rules of procedure.

Our procedural rules define the general scope of discovery as any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is 'reasonably calculated to lead to the discovery of admissible evidence.' ... Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution. Thus, discovery requests must be 'reasonably tailored' to include only relevant matters.

*Id.* at 152 (internal citations omitted). After finding the trial court had abused its discretion by issuing an overly broad discovery order, the trial court order compelling discovery was vacated. *Id.* at 153.

In this case, the ALC correctly identified the "central issue" in the case before it, i.e., whether the 2004–2005 South Carolina Health Plan standards applied to the relocation of SRHS's linear accelerator. SRHS contends the standards applied only to the addition, and not the relocation, of a linear accelerator. CCC contends otherwise.

SRHS's discovery requests are not remotely relevant to a resolution of the issue concerning the relocation of the linear accelerator. A challenge to relocation of the linear accelerator does not entitle SRHS to the information it seeks from CCC and affiliated entities. SRHS abused the discovery process with its scorched-earth approach.

■ We decline to rewrite and narrowly tailor SRHS's oppressive discovery requests so as to make them proper. That would reward improper conduct. Where, as here, a party abuses discovery, the proper remedy is to vacate the requests and require the party to start over. As a result, we vacate the five discovery orders before us.

### IV.

We vacate all discovery orders and remand for further proceedings consistent with this opinion.[8]

**VACATED AND REMANDED.**

TOAL, C.J., PLEICONES, HEARN, JJ., and Acting Justice JAMES E. MOORE, concur.

---

8. We are vacating all discovery orders, including those impacting GHS and USO. If the ALC determines that SRHS's discovery may properly reach entities affiliated with CCC, or that an affiliated entity should be permitted intervenor status, it will be done on a clean slate.