745 S.E.2d 105

Ex parte TLC LASER EYE CENTERS (Piedmont/Atlanta),
LLC; TLC The Laser Center (Institute), Inc.,
Appellants,

In re John Hollman, Respondent,

v.

Dr. Jonathan Woolfson, individually; Dr. Michael A. Campbell,
individually; Optical Solutions, Inc.; and Optical
Solutions of Bluffton, LLC, Defendants,

and

Danielle Hollman, Respondent,

v.

Dr. Jonathan Woolfson, individually; Dr. Michael A. Campbell,
individually; Optical Solutions, Inc.; and Optical
Solutions of Bluffton, LLC, Defendants.

Appellate Case No. 2012–210888.

No. 27280.

Supreme Court of South Carolina.

Heard May 2, 2013.
Decided July 3, 2013.

386

Steven Edward Buckingham and W. Howard Boyd Jr., both of Gallivan, White & Boyd, P.A., of Greenville, for Appellants.

Stephen R.H. Lewis and Douglas F. Patrick, both of Covington Patrick Hagins Stern & Lewis, P.A., of Greenville, for Respondents.

Justice PLEICONES.

This is a direct appeal from the trial court's denial of a motion for entry of a ruling on a motion for reconsideration and from the trial court's underlying order denying a motion for rule to show cause, for sanctions, and for modification of a protective order. We reverse.

## FACTS

In 1999 and 2001, John Hollman underwent three laser-assisted in situ keratomileusis (LASIK) eye surgeries performed by physician employees of TLC Laser Eye Centers (Piedmont/Atlanta), LLC, and TLC The Laser Center (Institute), Inc. (appellants). In the next several years, his vision deteriorated. In 2007, he filed an action against appellants as well as Dr. Jonathan Woolfson, Dr. Michael A. Campbell, and

others, alleging medical malpractice. His wife, Danielle Hollman, filed an action for loss of consortium (both actions hereinafter *"Hollman,"* since they have been treated as if consolidated).

In the course of discovery, the Hollmans (respondents) became aware that appellants had compiled a "Complex Case" and "Patient Advocacy" database. They requested that appellants produce the database as well as the medical records of some nonparty patients. Appellants opposed the request. The trial court ordered appellants to produce the requested items subject to a protective order designed to protect the private health information of nonparty patients from unnecessary exposure.

The protective order defined "Confidential Health Information" by reference to HIPAA definitions of protected information. In addition, it defined as Confidential Health Information materials that contained, were based on, or were derived from such Confidential Health Information. The protective order limited use of Confidential Health Information to *Hollman*[1] and limited disclosure to necessary personnel in that litigation. It required that, within sixty days after the termination of the action, all materials designated as Confidential Health Information be returned to the producing party or destroyed and all work product materials containing or referring to Confidential Health Information be destroyed. Appellants thereupon produced the database.

Subsequently, respondents filed a motion to modify the protective order to permit respondents' counsel to contact and interview patients whose confidential health information was contained in the database. The motion was granted. Appellants filed a petition for writ of certiorari to this Court, asking the Court to exercise its original jurisdiction on the basis of exceptional circumstances in order to review that order. This Court granted the petition, reversed the trial court's order, and remanded for further proceedings to determine whether the information to be gained by contacting and interviewing the nonparty patients was both relevant and necessary to respondents' claims. On remand, the trial court concluded it

---

1. In addition to the two *Hollman* actions, the order applied to *Carter et ux. v. Nimmons et al.* The latter case is not at issue.

was. This Court granted appellants' petition for writ of certiorari to review this ruling and vacated the trial court's order. *Hollman v. Woolfson,* 384 S.C. 571, 683 S.E.2d 495 (2009).

In March 2010, six months after this Court's opinion and while *Hollman* was still pending in circuit court, respondent John Hollman filed a class action complaint against appellants and many of their employees in United States District Court. In June 2010, appellants and respondents entered into a settlement agreement under which they settled all claims in both the state and federal actions. Appellants were dismissed from *Hollman.* Respondents' claims against the individual physicians had not been settled, so *Hollman* proceeded without appellants. As a result of the settlement, John Hollman withdrew from the federal class action, but a new lead plaintiff, Dickerson, was substituted, an action contemplated in the settlement.

In July 2010, Dickerson moved in the federal class action for precertification discovery to compel production of the database. Contemporaneously, appellants filed a notice of motion and motion for rule to show cause, motion to modify the protective order, and motion for sanctions in *Hollman,* although they were no longer parties in that action. Appellants cited what they alleged to be persistent, ongoing violations of the protective order by respondents and their counsel.

In August 2010, the *Hollman* trial court issued an order denying the motion. Appellants moved for reconsideration. In November 2010, the trial court held a hearing on that motion and indicated orally it would be denied. The trial court instructed respondents' counsel to draft the order.

In April 2011, respondents settled their claims against the remaining state court defendants in *Hollman.* Respondents' counsel wrote a letter to appellants' counsel on April 20, 2011, informing them of the settlement and impending dismissal of *Hollman.* The letter also indicated that respondents' counsel had not drafted an order denying appellants' Rule 59(e) motion but were prepared to do so. Appellants' counsel did not reply. In May 2011, the trial court dismissed *Hollman.*

In September 2011, appellants moved the court to order respondents' counsel to prepare an order denying appellants'

Rule 59(e) motion or, in the alternative, that the court prepare such an order. The trial court held a hearing on the motion in November 2011 and, by order of January 2012, denied the motion in part and granted it in part. It denied appellants' motion for reconsideration, finding it lacked subject matter jurisdiction over appellants' request as a result of the dismissal of the case. Notwithstanding this finding, it also held that settlement and dismissal of the case operated as a final adjudication, barring further litigation of pre-settlement violations of the protective order. It held appellants waived their right to a written order denying the Rule 59(e) motion by failing to respond to respondents' counsel's letter advising of the impending dismissal of the case without an order on appellants' Rule 59(e) motion. Turning to the protective order itself, the trial court held it retained jurisdiction to hear appellants' request for return of the database and granted their motion to compel observance of the protective order and return of the database, but subject to conditions it found had been consented to by the parties. Specifically, it ordered appellants' counsel to retain all returned database materials in its office and ordered that all work product materials governed by the protective order be filed under seal with the trial court until further order. The trial court denied appellants' motion for sanctions. This appeal followed.

## ISSUES

I. Do procedural bars prevent this Court from reviewing the August 2010 order?

II. Did the trial court err as a matter of law when it interpreted the protective order?

## DISCUSSION

I. Procedural bars

■ Appellants argue the trial court erred when it ruled that, because *Hollman* was dismissed before an order ruling on appellants' motion for reconsideration was entered, it lacked jurisdiction to enter such an order. We agree.

■ Despite finding it lacked jurisdiction to enter an order ruling on appellants' motion for reconsideration, the trial court

held it retained jurisdiction to enforce the protective order and ruled on the merits of appellants' allegations. This was obviously correct, since a court that issues a protective order retains jurisdiction to enforce it notwithstanding the conclusion of the suit in which it was issued. *See Ex parte Bland,* 380 S.C. 1, 667 S.E.2d 540 (2008) (finding attorneys willfully violated protective order issued in litigation where underlying case had been settled); *Davis v. Jennings,* 304 S.C. 502, 405 S.E.2d 601 (1991) (finding a newspaper entitled to intervene where Rule 24, SCRCP, motion was filed one month after case was dismissed with prejudice and record was sealed). This is true whether the motion for enforcement of the protective order was made before or after the dismissal of the underlying case. Where a timely post-trial motion is made seeking issuance of the merits order, the court has jurisdiction to rule on that motion as well. Thus, the trial court erred when it ruled it lacked jurisdiction to enter an order ruling on appellants' motion for reconsideration.

Appellants also argue many of the findings in the August 2010 order should be vacated because they deal with matters not raised in the hearing below. Appellants raised these issues in their Rule 59(e) motion, but the trial court erroneously ruled it lacked jurisdiction to address them. On remand, the trial court will address the merits of the Rule 59(e) motion.

■ Appellants also argue that the trial court erred when it held that appellants' failure to respond to respondents' counsel's letter notifying them of the impending dismissal of *Hollman* and five-month delay before they moved for preparation of an order ruling on their motion for summary judgment in *Hollman* extinguished their right to seek a written order on their motion for reconsideration. We agree. Appellants' failure to respond to the letter from respondents' counsel did not affect their right to obtain a written order from the trial court from which they could appeal. The drafting of the order was under the trial court's supervision. Assuming a party can waive the right to a written order from which he can appeal by failing to move the court to draft it after a significant lapse of time, the facts of this case do not imply such a waiver.

Finally, appellants argue the trial court erred when it ruled the parties' settlement agreement and resulting dismissal of

the action constituted a final adjudication on the merits of appellants' contention that respondents were violating the protective order, barring appellants' motion for rule to show cause. We agree. The trial court's determination that no violations of the protective order took place after the parties' settlement depends on its construction of the protective order. As discussed below, we conclude that construction was erroneous as a matter of law.

## II. Construction of the protective order

█ Appellants argue the circuit court erred when, in its order denying appellants' motion for rule to show cause, it held that "Confidential Health Information" as defined in the protective order refers only to health information coupled with the identity of a patient. We agree.

█ "As a general rule, judgments are to be construed like other written instruments. The determinative factor is the intent of the court, as gathered, not from an isolated part thereof, but from all the parts of the judgment itself. Hence, in construing a judgment, it should be examined and considered in its entirety. If the language employed is plain and unambiguous, there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." *City of North Myrtle Beach v. East Cherry Grove Realty Co., LLC,* 397 S.C. 497, 503, 725 S.E.2d 676, 679 (2012). A protective order is analogous to a judgment. The interpretation of the terms of a clear and unambiguous written instrument is a question of law. *See Miles v. Miles,* 393 S.C. 111, 117, 711 S.E.2d 880, 883 (2011). Questions of law are reviewed de novo. *Catawba Indian Tribe of South Carolina, supra.*

In relevant part, the protective order defines "Confidential Health Information" as

any document or information supplied that identifies an individual or subscriber in any manner and relates to the past, present, or future payment for the provision of health care to such individual or subscriber. The term "Confidential Health Information" specifically includes "protected health information" as such term is defined by the Standards for Privacy of Individually Identifiable Health Infor-

mation, 45 CFR parts 160 and 164, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996. See 45 C.F.R. sections 164.501 ("protected health information") and 160.103 ("individually identifiable health information"). "Confidential Health Information" includes all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from Confidential Health Information.

The definition of "individually identifiable health information" in 45 C.F.R. § 160.103 provides that

"Individually identifiable health information" is information that is a sub-set of health information, including demographic information collected from an individual, and:

(1) Is created or received by a healthcare provider, health plan, employer or healthcare clearing house; and

(2) Relates to the past, present or future physical or mental health or condition of an individual; the provision of healthcare to an individual; or the past, present or future payment for the provision of healthcare to an individual; and

(i) That identifies the individual; or

(ii) *With respect to which there is a reasonable basis to believe the information can be used to identify the individual.*

(Emphasis added.) The relevant portion of 45 C.F.R. § 164.501 provides a similar framework. That section defines "health information" as

any information, including genetic information, whether oral or recorded in any form or medium, that:

(1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and

(2) Relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

It further defines "individually identifiable health information" as

information that is a subset of health information, including demographic information collected from an individual, and:

(1) Is created by or received by a health care provider, health plan, employer, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) That identifies the individual; or (ii) *With respect to which there is a reasonable basis to believe the information can be used to identify the individual.*

(Emphasis added.) The plain language of both regulations indicates that protected information includes any combination of health information collected from an individual with respect to which there is a *reasonable basis* to believe it could be used to identify the individual. §§ 160.103; 164.501. This definition certainly includes compilations of data containing the dates of treatment, diagnosis, type of surgery, and treatment providers of appellants' individual patients, for example. It includes names of service providers, dates of visits, and diagnostic information obtained from patients' medical records, even when the patient's name is redacted.

Moreover, the order's limitations on use and distribution extend to "all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from Confidential Health Information." Under this definition, the contents of the database as a whole must be "Confidential Health Information" since it is at least a compilation that contains Confidential Health Information.

Because the trial court's construction of the protective order was improper, its finding that the only acts that constituted violations of the protective order occurred before the 2010 settlement must also be reversed and remanded for consideration under the proper construction of the protective order.

## CONCLUSION

The trial court erred when it held it lacked jurisdiction to enter an order ruling on appellants' motion for reconsideration after the action had been dismissed when a protective order governed disclosure of certain materials discovered in that action. The trial court also erred when it held that "Confiden-

tial Health Information" embraced only information containing both the name and personal health information of a patient. "Confidential Health Information" includes any combination of personal health information derived from appellants' records regarding which there is a reasonable basis to believe it could be used to identify the individual, as well as all summaries, compilations, and extracts derived from such Confidential Health Information.  We reverse and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

TOAL, C.J., KITTREDGE, J., and Acting Justice JAMES E. MOORE, concur.

BEATTY, J., concurring in result only.