**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Tasha Murphy and Steven Murphy, Appellants,

v.

Palmetto Lowcountry Behavioral Health, LLC, and
Steven G. Lopez, M.D., Defendants,

Of whom Steven G. Lopez, M.D., is the Respondent.

Appellate Case No. 2012-212771

———————

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2014-UP-189
Heard February 5, 2014 – Filed May 7, 2014

———————

**AFFIRMED**

———————

Marshall H. Waldron, Jr., Ernest Mitchell Griffith and
Otto Edworth Liipfert, III, all of Griffith Sadler & Sharp,
PA, of Beaufort, for Appellants.

Todd W. Smyth and Joshua Steven Whitley, both of
Smyth Whitley, LLC, of Charleston, for Respondent.

———————

**PER CURIAM:** In this medical malpractice action, Tasha and Steven Murphy appeal the trial court's order granting summary judgment to Steven G. Lopez, M.D., arguing the trial court erred in (1) granting Dr. Lopez summary judgment based upon lack of proximate cause and (2) granting Dr. Lopez summary judgment on the issue of punitive damages. We affirm.

1.      We hold the trial court properly granted summary judgment on the Murphys' medical malpractice claim against Dr. Lopez. First, we find summary judgment was proper because the Murphys failed to present evidence on the necessary element of proximate cause. *See Hollman v. Woolfson*, 384 S.C. 571, 579, 683 S.E.2d 495, 499 (2009) (noting a professional malpractice claim requires a showing of the standard of care, a breach of the standard of care, proximate cause, and damages); *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 247-48, 626 S.E.2d 1, 3-4 (2006) (providing, for a genuine issue of material fact to exist in a medical malpractice claim, a plaintiff must show the defendant's departure from generally recognized practices and procedures was the proximate cause of the alleged injuries and damages). We are inclined to agree with the Murphys' assertion that the trial court misconstrued their expert's testimony somewhat in finding Dr. Martin conceded that the failure to draw Tasha's lithium level "had nothing to do" with Tasha's eventual lithium toxicity. This passage of testimony, read in context, is not a concession by Dr. Martin that the failure to order the initial lithium test on Tasha had nothing to do with her eventual lithium toxicity. Rather, in directly answering the question of whether he was able to say to a reasonable degree of medical certainty that the failure to order that test caused her to become toxic or resulted in her toxicity, Dr. Martin replied, "It resulted in them not seeing that she was toxic, *yes*."(emphasis added) Nonetheless, we believe the Murphys have failed to present the necessary evidence that Dr. Lopez's "departure from such generally recognized practices and procedures was the proximate cause of the plaintiff's alleged injuries and damages." *David*, 367 S.C. at 248, 626 S.E.2d at 4.

The Murphys rely only on the expert testimony of Dr. Martin to establish proximate cause. It is incumbent on the plaintiff in a medical malpractice claim to establish proximate cause as well as the negligence of the physician, and if the plaintiff relies solely upon the opinion of a medical expert to establish a causal connection between the alleged negligence and the injury, the expert must state, with reasonable certainty, that in his professional opinion the injuries complained of most probably resulted from the defendant's negligence. *Hoard v. Roper Hosp., Inc.*, 387 S.C. 539, 546, 694 S.E.2d 1, 5 (2010). "When expert testimony is the only evidence of proximate cause relied upon, the testimony 'must provide a significant causal link between the alleged negligence and the plaintiff's injuries,

rather than a tenuous and hypothetical connection.'" *Id.* at 546-47, 694 S.E.2d at 5 (quoting *Ellis v. Oliver*, 323 S.C. 121, 125, 473 S.E.2d 793, 795 (1996)). Negligence may be deemed a proximate cause of injuries "only when without such negligence the injury would not have occurred or could have been avoided." *Id.* at 547, 694 S.E.2d at 5. "[I]n determining whether particular evidence meets the 'most probably' test, it is not necessary that the testifying expert actually use the words 'most probably.'" *Martasin v. Hilton Head Health Sys.,* 364 S.C. 430, 438, 613 S.E.2d 795, 800 (Ct. App. 2005). Rather, "[i]t is sufficient that the testimony is such as to judicially impress that the opinion . . . represents his professional judgment as to the most likely one among the possible causes." *Id.* at 439, 613 S.E.2d at 800 (citation and quotation marks omitted).

Dr. Martin did not testify Tasha's damages "most probably" resulted from Dr. Lopez's negligence. While Dr. Martin believed Tasha came to Palmetto Behavioral Health, LLC, (Palmetto) with lithium in her system and more was added, he acknowledged he did not know how Tasha developed lithium toxicity. Though Dr. Martin testified the failure to perform the blood test "resulted in them not seeing that [Tasha] was toxic," his testimony was not such as to "judicially impress that the opinion . . . represent[ed] his professional judgment as to the most likely one among the possible causes." While the failure to conduct a blood test may have resulted in the medical providers not seeing that Tasha had become toxic, there is no evidence or expert testimony showing when or how Tasha became toxic, or that the administration of a blood test would have prevented her toxicity or her damages. Indeed, Tasha could have conceivably been suffering from lithium toxicity when she presented to Palmetto, and there is no evidence linking the lack of the initial blood test to any damages the Murphys may have subsequently suffered. Neither is there any evidence any other actions or inactions on the part of Dr. Lopez proximately caused the Murphys' damages. Even though it was not necessary that the words "most probably" be used, Dr. Martin's testimony failed to "provide a significant causal link between the alleged negligence and the plaintiff's injuries, rather than a tenuous and hypothetical connection." *Hoard*, 387 S.C. at 546-47, 694 S.E.2d at 5. Accordingly, we find the Murphys failed to present a scintilla of evidence on proximate cause.

Second, we find summary judgment was proper because the Murphys failed to meet their burden of establishing any *deviation from the standard of care* by Dr. Lopez which proximately resulted in the Murphys' damages. *See Hollman*, 384 S.C. at 579, 683 S.E.2d at 499 (noting a professional malpractice claim requires a showing of the standard of care, a breach of the standard of care, proximate cause, and damages). Undoubtedly, Dr. Martin testified in his deposition that Dr. Lopez,

specifically, "should have drawn a lithium level *on admission*," (emphasis added) and the failure to draw a lithium level *on admission* was a violation of the standard of care for a psychiatrist, and that was the only violation of the standard of care he believed Dr. Lopez committed in this case. Dr. Martin again emphasized that Tasha's lithium blood test "should have been drawn *immediately*," (emphasis added) that an "*original baseline* was never checked," (emphasis added) and "that would have been the standard of care of assessment and treatment." However, the trial court found, and it is undisputed from the record before us, that Tasha was admitted to Palmetto, not by Dr. Lopez, but by Dr. Jenkins, and it was Dr. Jenkins who immediately ordered Tasha back on her previously prescribed dosage of lithium. It was not until the next day that Dr. Lopez first became involved in Tasha's treatment, at which time he concurred with Dr. Jenkins' diagnosis and treatment recommendations. The Murphys contend they presented a scintilla of evidence on the standard of care issue, pointing to evidence Dr. Lopez made the decision to continue Tasha on the plan put in place by Dr. Jenkins even though Dr. Lopez did not think Dr. Jenkins actually physically saw Tasha when she arrived at Palmetto. They argue Dr. Lopez made the decision to continue giving lithium to Tasha even though her levels had not been checked and she had not been completely evaluated by a doctor until Dr. Lopez saw her, and Dr. Lopez should have discontinued the lithium until an accurate baseline could be obtained. However, there is no evidence in the record that continuing Tasha on the lithium prescribed by the admitting physician or the failure of a subsequent treating physician to order a baseline test for lithium constituted a breach of the standard of care. Further, the Murphys' own expert testified the failure to draw a lithium level *on admission* was the only violation of the standard of care, and he did not believe it was negligent for any subsequent physicians not to order a baseline test. Additionally, the uncontroverted testimony of Dr. Lopez's expert was that by the time Dr. Lopez saw Tasha on the morning of November 20, 2002, she was already on lithium, and drawing a blood level at that point "would be a clear mistake" as it would produce a level no one would know how to interpret and would lead to confusion in Tasha's care. Thus, while Dr. Martin's testimony established it was a breach of standard of care for the *medical providers* to not "immediately" and "on admission" obtain an "original baseline" of Tasha's lithium level, which would then indicate whether Tasha already had lithium in her system, the only evidence in the record before us shows Dr. Lopez was not Tasha's admitting physician, he did not order that she be given lithium before a blood test could be drawn to show her

lithium level, and by the time Dr. Lopez saw Tasha, she was already administered lithium pursuant to Dr. Jenkins' orders. Accordingly, there is not a scintilla of evidence that Dr. Lopez breached the standard of care.[1]

---

[1] We disagree with the Murphys' assertion that this court should not affirm the trial court on the basis that they failed to meet their burden of proof regarding the departure from standard of care. "The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal." Rule 220(c), SCACR. Our courts have found, in spite of the fact that the trial court may have erred in granting summary judgment on a particular basis, summary judgment was properly granted upon other reasons appearing in the record pursuant to Rule 220(c), SCACR. *See Stinney v. Sumter Sch. Dist. 17*, 391 S.C. 547, 550-51, 552, 707 S.E.2d 397, 398-99, 399 (2011) (holding, although the trial court erred in granting summary judgment on the Stinneys' due process claim based upon their failure to exhaust administrative remedies, the Stinneys were provided due process, and therefore affirming the trial court's grant of summary judgment pursuant to Rule 220(c), SCACR); *Vaughan v. McLeod Reg'l Med. Ctr.*, 372 S.C. 505, 510-11, 512, 642 S.E.2d 744, 747 (2007) (holding, although the circuit court erred in applying statutory good faith immunity to grant summary judgment, summary judgment should be affirmed based upon the ground of common-law immunity, noting an appellate court may affirm for any reason appearing in the record pursuant to Rule 220(c), SCACR). Further, though the trial court did initially indicate in its verbal ruling following the hearing on the matter that it believed there was a scintilla of evidence as to the departure from the standard of care, the trial court did not specifically deny Dr. Lopez's motion for summary judgment on this ground in his oral ruling. Additionally, the trial court's written order granting summary judgment was not issued for over a month following the hearing, during which time the court would have had a greater opportunity to review the evidence submitted. "Until written and entered, the trial judge retains discretion to change his mind and amend his oral ruling accordingly." *Ford v. State Ethics Comm'n*, 344 S.C. 642, 646, 545 S.E.2d 821, 823 (2001). "The written order is the trial judge's final order and as such constitutes the final judgment of the court." *Id.* "Judgments in general . . . are not final until written and entered." *Doe v. Doe*, 324 S.C. 492, 501, 478 S.E.2d 854, 859 (Ct. App. 1996). The trial court did not deny Dr. Lopez summary judgment on this basis. We further note the trial court recognized in its written order that Dr. Jenkins was the admitting physician, and it was Dr. Jenkins who immediately started Tasha back on her previous lithium dosage.

2.     The Murphys also assert error in the granting of summary judgment to Dr. Lopez on their claim for punitive damages.  However, as conceded by the Murphys, affirmance of the trial court's grant of summary judgment on the underlying claim precludes recovery of punitive damages.  *See McGee v. Bruce Hosp. Sys.*, 344 S.C. 466 470, 545 S.E.2d 286, 288 (2001) ("The rule in South Carolina is that there must be an award of actual or nominal damages for a verdict of punitive damages to be supported.  This rule is premised on the fact that liability must be established before a plaintiff can seek punitive damages.").

For the foregoing reasons, the order of the trial court is

**AFFIRMED.**

**HUFF, THOMAS, and PIEPER, JJ., concur.**